# UNITED STATES *v.* WATTS

No. 95–1906.   Decided January 6, 1997*

*Together with *United States* v. *Putra,* also on petition for writ of certiorari to the same court.

PER CURIAM.

In these two cases, two panels of the Court of Appeals for the Ninth Circuit held that sentencing courts could not consider conduct of the defendants underlying charges of which they had been acquitted. *United States* v. *Watts*, 67 F. 3d 790 (CA9 1995) *(Watts)*; *United States* v. *Putra*, 78 F. 3d 1386 (CA9 1996) *(Putra)*. Every other Court of Appeals has held that a sentencing court may do so, if the Government establishes that conduct by a preponderance of the evidence.[1] The Government filed a single petition for certiorari seeking review of both cases, pursuant to this Court's Rule 12.4, to resolve this split. Because the panels' holdings conflict with the clear implications of 18 U. S. C. § 3661, the Sentencing Guidelines, and this Court's decisions, particularly *Witte* v. *United States*, 515 U. S. 389 (1995), we grant the petition and reverse in both cases.

In *Watts*, police discovered cocaine base in a kitchen cabinet and two loaded guns and ammunition hidden in a bedroom closet of Watts' house. A jury convicted Watts of possessing cocaine base with intent to distribute, in violation of

[1] *United States* v. *Boney*, 977 F. 2d 624, 635–636 (CADC 1992); *United States* v. *Mocciola*, 891 F. 2d 13, 16–17 (CA1 1989) (criticized in dicta in *United States* v. *Lanoue*, 71 F. 3d 966, 984 (CA1 1995)); *United States* v. *Rodriguez-Gonzalez*, 899 F. 2d 177, 180–182 (CA2), cert. denied, 498 U. S. 844 (1990); *United States* v. *Ryan*, 866 F. 2d 604, 608–609 (CA3 1989); *United States* v. *Isom*, 886 F. 2d 736, 738–739 (CA4 1989); *United States* v. *Juarez-Ortega*, 866 F. 2d 747, 748–749 (CA5 1989) *(per curiam)*; *United States* v. *Milton*, 27 F. 3d 203, 208–209 (CA6 1994), cert. denied, 513 U. S. 1085 (1995); *United States* v. *Fonner*, 920 F. 2d 1330, 1332–1333 (CA7 1990); *United States* v. *Dawn*, 897 F. 2d 1444, 1449–1450 (CA8), cert. denied, 498 U. S. 960 (1990); *United States* v. *Coleman*, 947 F. 2d 1424, 1428–1429 (CA10 1991), cert. denied, 503 U. S. 972 (1992); *United States* v. *Averi*, 922 F. 2d 765, 765–766 (CA11 1991) *(per curiam)*.

150

21 U. S. C. § 841(a)(1), but acquitted him of using a firearm in relation to a drug offense, in violation of 18 U. S. C. § 924(c). Despite Watts' acquittal on the firearms count, the District Court found by a preponderance of the evidence that Watts had possessed the guns in connection with the drug offense. In calculating Watts' sentence, the court therefore added two points to his base offense level under United States Sentencing Commission, Guidelines Manual § 2D1.1(b)(1) (Nov. 1995) (USSG). The Court of Appeals vacated the sentence, holding that "a sentencing judge may not, 'under *any* standard of proof,' rely on facts of which the defendant was acquitted." 67 F. 3d, at 797 (quoting *United States* v. *Brady*, 928 F. 2d 844, 851, and n. 12 (CA9 1991), abrogated on other grounds, *Nichols* v. *United States*, 511 U. S. 738 (1994)) (emphasis added in *Watts*). The Government argued that the District Court could have enhanced Watts' sentence without considering facts "necessarily rejected" by the jury's acquittal on the § 924(c) charge because the sentencing enhancement did not require a connection between the firearm and the predicate offense, whereas § 924(c) did. The court rejected this argument, stated that both the enhancement and § 924(c) involved such a connection, and held that the District Court had impermissibly "reconsider[ed] facts that the jury necessarily rejected by its acquittal of the defendant on another count." 67 F. 3d, at 796.

In *Putra*, authorities had videotaped two transactions in which Putra and a codefendant (a major drug dealer) sold cocaine to a Government informant. The indictment charged Putra with, among other things, one count of aiding and abetting possession with intent to distribute one ounce of cocaine on May 8, 1992; and a second count of aiding and abetting possession with intent to distribute five ounces of cocaine on May 9, 1992, both in violation of 21 U. S. C. § 841(a)(1) and 18 U. S. C. § 2. The jury convicted Putra on the first count but acquitted her on the second. At sentencing, however, the District Court found by a preponderance

of the evidence that Putra had indeed been involved in the May 9 transaction. The District Court explained that the second sale was relevant conduct under USSG § 1B1.3, and it therefore calculated Putra's base offense level under the Guidelines by aggregating the amounts of both sales. As in *Watts*, the Court of Appeals vacated and remanded for resentencing. Reasoning that the jury's verdict of acquittal manifested an "explicit rejection" of Putra's involvement in the May 9 transaction, the Court of Appeals held that "allowing an increase in Putra's sentence would be effectively punishing her for an offense for which she has been acquitted." 78 F. 3d, at 1389. The panel explained that it was imposing "a judicial limitation on the facts the district court may consider at sentencing, beyond any limitation imposed by the Guidelines." *Ibid.* Then-Chief Judge Wallace dissented, arguing that the panel's "sweeping language contradicts the Guidelines, our practice prior to enactment of the Guidelines, decisions of other circuits, and recent Supreme Court authority." *Id.*, at 1390.

We begin our analysis with 18 U. S. C. § 3661, which codifies the longstanding principle that sentencing courts have broad discretion to consider various kinds of information. The statute states:

> "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

We reiterated this principle in *Williams* v. *New York*, 337 U. S. 241 (1949), in which a defendant convicted of murder and sentenced to death challenged the sentencing court's reliance on information that the defendant had been involved in 30 burglaries of which he had not been convicted. We contrasted the different limitations on presentation of evidence at trial and at sentencing: "Highly relevant—if not es-

sential—to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Id.*, at 247 (footnote omitted); see *Nichols, supra,* at 747 (noting that sentencing courts have traditionally and constitutionally "considered a defendant's past criminal behavior, even if no conviction resulted from that behavior") (citing *Williams, supra); BMW of North America, Inc. v. Gore,* 517 U. S. 559, 573, n. 19 (1996) ("A sentencing judge may even consider past criminal behavior which did not result in a conviction") (citing *Williams, supra*). Neither the broad language of § 3661 nor our holding in *Williams* suggests any basis for the courts to invent a blanket prohibition against considering certain types of evidence at sentencing. Indeed, under the pre-Guidelines sentencing regime, it was "well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted." *United States* v. *Donelson,* 695 F. 2d 583, 590 (CADC 1982) (Scalia, J.).

The Guidelines did not alter this aspect of the sentencing court's discretion. " '[V]ery roughly speaking, [relevant conduct] corresponds to those actions and circumstances that courts typically took into account when sentencing prior to the Guidelines' enactment.'" *Witte, supra,* at 402 (quoting *United States* v. *Wright,* 873 F. 2d 437, 441 (CA1 1989) (Breyer, J.)). Section 1B1.4 of the Guidelines reflects the policy set forth in 18 U. S. C. § 3661:

> "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See* 18 U. S. C. § 3661."

Section 1B1.3, in turn, describes in sweeping language the conduct that a sentencing court may consider in determining

the applicable guideline range. The commentary to that section states: "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." USSG § 1B1.3, comment., backg'd. With respect to certain offenses, such as Putra's drug conviction, USSG § 1B1.3(a)(2) requires the sentencing court to consider "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." Application Note 3 explains that "[a]pplication of this provision does not require the defendant, in fact, to have been convicted of multiple counts." The Note also gives the following example:

> "[W]here the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales."

Accordingly, the Guidelines conclude that "[r]elying on the entire range of conduct, regardless of the number of counts that are alleged *or on which a conviction is obtained,* appears to be the most reasonable approach to writing workable guidelines for these offenses." USSG § 1B1.3, comment., backg'd (emphasis added).

Although JUSTICE STEVENS' dissent concedes that a district court may properly consider "evidence adduced in a trial that resulted in an acquittal" when choosing a particular sentence within a guideline range, it argues that the court must close its eyes to acquitted conduct at earlier stages of the sentencing process because the "broadly inclusive language of § 3661" is incorporated only into § 1B1.4 of the Guidelines. *Post,* at 162. This argument ignores § 1B1.3 which, as we have noted, directs sentencing courts to con-

sider all other related conduct, whether or not it resulted in a conviction. JUSTICE STEVENS also contends that because Congress instructed the Sentencing Commission, in 28 U. S. C. § 994(*l*), to ensure that the Guidelines provide incremental punishment for a defendant who is convicted of multiple offenses, it could not have meant for the Guidelines to increase a sentence based on offenses of which a defendant has been acquitted. *Post*, at 168. The statute is not, however, "cast in restrictive or exclusive terms." *United States v. Ebbole*, 917 F. 2d 1495, 1501 (CA7 1990). Far from limiting a sentencing court's power to consider uncharged or acquitted conduct, § 994(*l*) simply ensures that, at a minimum, the Guidelines provide additional penalties when defendants are convicted of multiple offenses. *Ibid.* If we accepted JUSTICE STEVENS' logic, § 994(*l*) would prohibit a district court from considering acquitted conduct for any sentencing purposes, whether for setting the guidelines range or for choosing a sentence within that range—a novel proposition that JUSTICE STEVENS does not defend. *Post*, at 162. In short, we are convinced that a sentencing court may consider conduct of which a defendant has been acquitted.

The Court of Appeals' position to the contrary not only conflicts with the implications of the Guidelines, but it also seems to be based on erroneous views of our double jeopardy jurisprudence. The Court of Appeals asserted that, when a sentencing court considers facts underlying a charge on which the jury returned a verdict of not guilty, the defendant "'suffer[s] punishment for a criminal charge for which he or she was acquitted.'" *Watts*, 67 F. 3d, at 797 (quoting *Brady*, 928 F. 2d, at 851). As we explained in *Witte*, however, sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction. 515 U. S., at 402–403. In *Witte*, we held that a sentencing court could, consistent with the Double Jeopardy Clause, consider uncharged cocaine importation

in imposing a sentence on marijuana charges that was within the statutory range, without precluding the defendant's subsequent prosecution for the cocaine offense. We concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." *Id.*, at 401. Rather, the defendant is "punished only for the fact that the *present* offense was carried out in a manner that warrants increased punishment . . . ." *Id.*, at 403; see also *Nichols*, 511 U. S., at 747.

The Court of Appeals likewise misunderstood the preclusive effect of an acquittal, when it asserted that a jury "'reject[s]'" some facts when it returns a general verdict of not guilty. *Putra*, 78 F. 3d, at 1389 (quoting *Brady, supra*, at 851). The Court of Appeals failed to appreciate the significance of the different standards of proof that govern at trial and sentencing. We have explained that "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *United States* v. *One Assortment of 89 Firearms*, 465 U. S. 354, 361 (1984). As then-Chief Judge Wallace pointed out in his dissent in *Putra*, it is impossible to know exactly why a jury found a defendant not guilty on a certain charge.

"[A]n acquittal is not a finding of any fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt. Without specific jury findings, no one can logically or realistically draw any factual finding inferences . . . ." 78 F. 3d, at 1394.

Thus, contrary to the Court of Appeals' assertion in *Brady, supra*, at 851, the jury cannot be said to have "necessarily rejected" any facts when it returns a general verdict of not guilty.

For these reasons, "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." *Dowling* v. *United States,* 493 U. S. 342, 349 (1990). The Guidelines state that it is "appropriate" that facts relevant to sentencing be proved by a preponderance of the evidence, USSG § 6A1.3, comment., and we have held that application of the preponderance standard at sentencing generally satisfies due process. *McMillan* v. *Pennsylvania,* 477 U. S. 79, 91–92 (1986); *Nichols, supra,* at 747–748. We acknowledge a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence.[2] The cases be-

---

[2] See *McMillan,* 477 U. S., at 88 (upholding use of preponderance standard where there was no allegation that the sentencing enhancement was "a tail which wags the dog of the substantive offense"); *Kinder* v. *United States,* 504 U. S. 946, 948–949 (1992) (White, J., dissenting from denial of certiorari) (acknowledging split); *United States* v. *Kikumura,* 918 F. 2d 1084, 1102 (CA3 1990) (holding that clear-and-convincing standard is implicit in 18 U. S. C. § 3553(b), which requires a sentencing court to "find" certain facts in order to justify certain large upward departures; not reaching the due process issue); *United States* v. *Gigante,* 39 F. 3d 42, 48 (CA2 1994), as amended, 94 F. 3d 53, 56 (1996) (not reaching due process issue; "In our view, the preponderance standard is no more than a *threshold* basis for adjustments and departures, and the weight of the evidence, at some point along a continuum of sentence severity, should be considered with regard to both upward adjustments and upward departures. . . . Where a higher standard, appropriate to a substantially enhanced sentence range, is not met, the court should depart downwardly"); *United States* v. *Lombard,* 72 F. 3d 170, 186–187 (CA1 1995) (authorizing downward departure in "an unusual and perhaps a singular case" that may have "exceeded" constitutional limits, where acquitted conduct calling for an "enormous" sentence enhancement "is itself very serious conduct," "where the ultimate sentence is itself enormous, and where the judge is seemingly mandated to impose that sentence"); see also *United States* v. *Townley,* 929 F. 2d 365, 369 (CA8 1991) ("At the very least, *McMillan* allows for the possibility that the preponderance standard the Court approved for garden variety sentencing determinations may fail to comport with due proc-

fore us today do not present such exceptional circumstances, and we therefore do not address that issue. We therefore hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.

Accordingly, the Court of Appeals erred in both cases before us today. In *Putra*, the jury simply found that the prosecution had not proved the defendant's complicity in the May 9 sale beyond a reasonable doubt. The acquittal sheds no light on whether a preponderance of the evidence established Putra's participation in that transaction. Likewise, in *Watts*, the jury acquitted the defendant of using or carrying a firearm during or in relation to the drug offense. That verdict does not preclude a finding by a preponderance of the evidence that the defendant did, in fact, use or carry such a weapon, much less that he simply *possessed* the weapon in connection with a drug offense.

The petition for certiorari is granted, the judgments of the Court of Appeals are reversed, and the cases are remanded for further proceedings consistent with this opinion. Respondent Putra's motion to proceed *in forma pauperis* is granted. The motion of Morris L. Whitman for leave to file a brief as *amicus curiae* is granted.

*It is so ordered.*

---

ess where, as here, a sentencing enhancement factor becomes 'a tail which wags the dog of the substantive offense'") (quoting *McMillan, supra,* at 88); *United States* v. *Restrepo,* 946 F. 2d 654, 656, n. 1 (CA9 1991) (en banc) (suggesting that clear-and-convincing evidence might be required for extraordinary upward adjustments or departures), cert. denied, 503 U. S. 961 (1992); *United States* v. *Lam Kwong-Wah,* 966 F. 2d 682, 688 (CADC) (same), cert. denied, 506 U. S. 901 (1992); *United States* v. *Trujillo,* 959 F. 2d 1377, 1382 (CA7) (same), cert. denied, 506 U. S. 897 (1992). But see *United States* v. *Washington,* 11 F. 3d 1510, 1516 (CA10 1993) ("At least as concerns making guideline calculations the issue of a higher than a preponderance standard is foreclosed in this circuit"), cert. denied, 511 U. S. 1020 (1994).

JUSTICE SCALIA, concurring.

I do not agree with the assertion in JUSTICE BREYER's concurrence that there is no obstacle to the Sentencing Commission's reversing today's outcome by mandating disregard of the information we today hold it proper to consider. Title 28 U. S. C. § 994(b)(1) requires the Guidelines to be "consistent with all pertinent provisions of title 18, United States Code." In turn, 18 U. S. C. § 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." In my view, neither the Commission nor the courts have authority to decree that information which would otherwise justify enhancement of sentence or upward departure from the Guidelines may not be considered for that purpose (or may be considered only after passing some higher standard of probative worth than the Constitution and laws require) if it pertains to acquitted conduct. If the Commission believes that the rules of evidence and proof established by the Constitution and laws are inadequate, it may of course recommend changes to the Congress, cf. 28 U. S. C. § 994(w).

JUSTICE BREYER, concurring.

I join the Court's *per curiam* opinion while noting that it poses no obstacle to the Sentencing Commission itself deciding whether or not to enhance a sentence on the basis of conduct that a sentencing judge concludes did take place, but in respect to which a jury acquitted the defendant.

In telling judges in ordinary cases to consider "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction," United States Sentencing Commission, Guidelines Manual § 1B1.3(a)(2) (Nov. 1995) (USSG), the Guidelines recognize the fact that before their creation sentencing judges often took account, not only of the precise conduct that made up

the offense of conviction, but of certain related conduct as well. And I agree with the Court that the Guidelines, as presently written, do not make an exception for related conduct that was the basis for a different charge of which a jury acquitted that defendant. To that extent, the Guidelines' policy rests upon the logical possibility that a sentencing judge and a jury, applying different evidentiary standards, could reach different factual conclusions.

This truth of logic, however, is not the only pertinent policy consideration. The Commission in the past has considered whether the Guidelines should contain a specific exception to their ordinary "relevant conduct" rules that would instruct the sentencing judge not to base a sentence enhancement upon acquitted conduct. United States Sentencing Commission, Sentencing Guidelines for United States Courts, 57 Fed. Reg. 62832 (1992) (proposed USSG § 1B1.3(c)). Given the role that juries and acquittals play in our system, the Commission could decide to revisit this matter in the future. For this reason, I think it important to specify that, as far as today's decision is concerned, the power to accept or reject such a proposal remains in the Commission's hands.

JUSTICE STEVENS, dissenting.

"The Sentencing Reform Act of 1984 revolutionized the manner in which district courts sentence persons convicted of federal crimes." *Burns* v. *United States,* 501 U. S. 129, 132 (1991). The goals of rehabilitation and fairness served by individualized sentencing that formerly justified vesting judges with virtually unreviewable sentencing discretion have been replaced by the impersonal interest in uniformity and retribution.[1] Strict mandatory rules have dramatically

---

[1] Compare *Williams* v. *New York,* 337 U. S. 241, 247–248 (1949) ("Reformation and rehabilitation of offenders have become important goals of criminal jurisprudence"), with 28 U. S. C. § 994(k) (rejecting rehabilitation as a goal of imprisonment) and 18 U. S. C. § 3553(a)(2) (stating that punish-

confined the exercise of judgment based on a totality of the circumstances. "While the products of the Sentencing Commission's labors have been given the modest name 'Guidelines,' . . . they have the force and effect of laws, prescribing the sentences criminal defendants are to receive. A judge who disregards them will be reversed." *Mistretta* v. *United States*, 488 U. S. 361, 413 (1989) (SCALIA, J., dissenting).

## I

In 1970, during the era of individualized sentencing, Congress enacted the statute now codified as 18 U. S. C. § 3661 to make it clear that otherwise inadmissible evidence could be considered by judges in the exercise of their sentencing discretion. The statute, however, did not tell the judge how to weigh the significance of any of that evidence. The judge was free to rely on any information that might shed light on a decision to grant probation, to impose the statutory maximum, or to determine the precise sentence within those extremes. Wisdom and experience enabled the judge to give appropriate weight to uncorroborated hearsay or to evidence of criminal conduct that had not resulted in a conviction. Even if convinced that a jury had erroneously acquitted a defendant, the judge was not required to ignore the evidence of guilt. At the same time, however, he or she was free to discount the significance of that evidence if mitigating circumstances—perhaps the same facts that persuaded the jury that an acquittal was appropriate—were present. Like a jury in a capital case, the judge could exercise discretion "to dispense mercy on the basis of factors too intangible to write into a statute," *Gregg* v. *Georgia*, 428 U. S. 153, 222 (1976) (White, J., concurring in judgment).

Although the Sentencing Reform Act of 1984 has cabined the discretion of sentencing judges, the 1970 statute remains on the books. As was true when it was enacted, § 3661 does

---

ment should serve retributive, deterrent, educational, and incapacitative goals).

not speak to questions concerning the relevance or the weight of any item of evidence. That statute is not offended by provisions in the Guidelines that proscribe reliance on evidence of economic hardship, drug or alcohol dependence, or lack of guidance as a youth in making certain sentencing decisions. See *Koon* v. *United States*, 518 U. S. 81, 93 (1996). Conversely, that statute does not command that any particular weight—or indeed that any weight at all—be given to evidence that a defendant may have committed an offense that the prosecutor failed to prove beyond a reasonable doubt. In short, while the statute that introduces the Court's analysis of these cases, *ante*, at 151, does support its narrow holding that sentencing courts may sometimes "consider conduct of the defendants underlying other charges of which they had been acquitted," *ante*, at 149, it sheds no light on whether the district judges' application of the Guidelines in the manner presented in these cases was authorized by Congress, or is allowed by the Constitution.

A closer examination of the interaction among § 3661, the other provisions of the Sentencing Reform Act, and the Guidelines demonstrates that the role played by § 3661 is of a narrower scope than the Court's opinion suggests. The Sentencing Reform Act was enacted primarily to address Congress' concern that similar offenders convicted of similar offenses were receiving "an unjustifiably wide range of sentences." S. Rep. No. 98–225, p. 38 (1983). It therefore created the Sentencing Commission and directed it to draft Guidelines that would cabin the discretion of all judges—those who were too harsh as well as those who were too lenient. See 28 U. S. C. § 991(b)(1)(B). While the abolition of parole indicates that the new rules were generally intended to increase the minimum levels of punishment, see 18 U. S. C. §§ 3624(a) and (b), they also confined the judges' authority to impose the maximum sentences authorized by statute. The central mechanism that Congress promulgated to avoid disparate sentencing in typical cases is a require-

ment that for any sentence of imprisonment in the Guidelines, "the maximum of the range established for such a term shall not exceed the minimum of that range by more than the greater of 25 percent or 6 months," 28 U. S. C. § 994(b)(2). The determination of which of these narrow ranges a particular sentence should fall into is made by operation of mandatory rules, but within the particular range, the judge retains broad discretion to set a particular sentence.

By their own terms, the Guidelines incorporate the broadly inclusive language of § 3661 only into those portions of the sentencing decision in which the judge retains discretion.

United States Sentencing Commission, Guidelines Manual § 1B1.4 (Nov. 1995) (USSG) provides:

> "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See* 18 U. S. C. § 3661."

Thus, as in the pre-Guidelines sentencing regime, it is in the area in which the judge exercises discretion that § 3661 authorizes unlimited access to information concerning the background, character, and conduct of the defendant. When the judge is exercising such discretion, I agree that he or she may consider otherwise inadmissible evidence, including evidence adduced in a trial that resulted in an acquittal. But that practice, enshrined in § 3661 and USSG § 1B1.4, sheds little, if any, light on the appropriateness of the District Courts' application of USSG § 1B1.3, which defines relevant conduct for the purposes of determining the Guidelines range within which a sentence can be imposed.

## II

The issue of law raised by the sentencing of Cheryl Putra involved the identification of the offense level that deter-

mined the range within which the judge could exercise discretion. Because she was a first offender with no criminal history, that range was based entirely on the offense or offenses for which she was to be punished. She was found guilty of aiding and abetting the intended distribution of one ounce of cocaine on May 8, 1992, but not guilty of participating in a similar transaction involving five ounces of cocaine on May 9, 1992. *United States* v. *Putra*, 78 F. 3d 1386, 1387 (CA9 1996). If the guilty verdict provided the only basis for imposing punishment on Ms. Putra, the Guidelines would have required the judge to impose a sentence of no less than 15 months in prison and would have prohibited him from imposing a sentence longer than 21 months.

If Putra had been found guilty of also participating in the 5-ounce transaction on May 9, 1992, the Guidelines would have required that both the minimum and the maximum sentences be increased; the range would have been between 27 and 33 months. As the District Court applied the Guidelines, precisely the same range resulted from the acquittal as would have been dictated by a conviction. Notwithstanding the absence of sufficient evidence to prove guilt beyond a reasonable doubt, the alleged offense on May 9 led to the imposition of a sentence six months longer than the maximum permitted for the only crime that provided any basis for punishment.[2]

---

[2] The circumstances surrounding Vernon Watts' sentencing were somewhat different from those involved in Putra's sentencing. Watts was acquitted of the crime of using a firearm in relation to a drug offense, in violation of 18 U. S. C. § 924(c), but was found guilty of certain drug crimes. *United States* v. *Watts*, 67 F. 3d 790, 793 (CA9 1995). The sentencing judge enhanced Watts' base offense level by two points, pursuant to USSG § 2D1.1(b)(1), after concluding that the defendant's "possession" of the firearm in connection with the crime had been proved by a preponderance of the evidence. 67 F. 3d, at 797–798. Because the "use" of a firearm and its "possession" are not identical, the judge may not have relied on facts necessarily rejected by the jury in concluding that the sentencing enhancement was appropriate. I nevertheless believe that the enhancement

In my judgment neither our prior cases nor the text of the statute warrants this perverse result.   And the vigor of the debate among judges in the Courts of Appeals on this basic issue belies the ease with which the Court addresses it, without hearing oral argument or allowing the parties to fully brief the issues.[3]

---

was inappropriate because it was based on conduct that the judge found only by a preponderance of the evidence.   Since Watts' base offense level was increased by this evidence, I believe it should have been proved beyond a reasonable doubt.

[3] Although the Court's decision suggests that the approach taken by the Ninth Circuit in these cases breaks from settled law in every other Circuit, the opinion ignores the fact that respected jurists all over the country have been critical of the interaction between the Sentencing Guidelines' mechanical approach and the application of a preponderance of the evidence standard to so-called relevant conduct.   See, *e. g.*, *United States* v. *Silverman*, 976 F. 2d 1502, 1519, 1527 (CA6 1992) (Merritt, C. J., dissenting); *id.*, at 1533 (Martin, J., dissenting); *United States* v. *Concepcion*, 983 F. 2d 369, 389, 396 (CA2 1992) (Newman, C. J., concurring) ("A just system of criminal sentencing cannot fail to distinguish between an allegation of conduct resulting in a conviction and an allegation of conduct resulting in an acquittal"); *United States* v. *Galloway*, 976 F. 2d 414, 436 (CA8 1992) (Bright, J., dissenting, joined by Arnold, C. J., Lay, J., and McMillian, J.); *United States* v. *Restrepo*, 946 F. 2d 654, 663 (CA9 1991) (Pregerson, J., dissenting, joined by Hug, J.); *id.*, at 664 (Norris, J., dissenting, joined by Hug, J., Pregerson, J., and D. W. Nelson, J.).   Cf. *United States* v. *Lanoue*, 71 F. 3d 966, 984 (CA1 1995) ("Although it makes no difference in this case, we believe that a defendant's Fifth and Sixth Amendment right to have a jury determine his guilt beyond a reasonable doubt is trampled when he is imprisoned (for any length of time) on the basis of conduct of which a jury has necessarily acquitted him").   See also Martin, The Cornerstone Has No Foundation: Relevant Conduct in Sentencing and the Requirements of Due Process, 3 Const. L. J. 25, 34–36 (1993); Beale, Procedural Issues Raised by Guidelines Sentencing: The Constitutional Significance of the "Elements of the Sentence," 35 Wm. & Mary L. Rev. 147, 157–158 (1993); Herman, The Tail that Wagged the Dog: Bifurcated Fact-Finding under the Federal Sentencing Guidelines and the Limits of Due Process, 66 S. Cal. L. Rev. 289 (1992); Heaney, The Reality of Guidelines Sentencing: No End to Disparity, 28 Am. Crim. L. Rev. 161, 208–220 (1991).

## III

The Court relies principally on three cases—*Williams* v. *New York*, 337 U. S. 241 (1949); *McMillan* v. *Pennsylvania*, 477 U. S. 79 (1986); and *Witte* v. *United States*, 515 U. S. 389 (1995)—to justify its outcome. In each instance, the reliance is misplaced.

For three reasons, *Williams* cannot support the result in these cases. First, it dealt with the exercise of the sentencing judge's discretion within the range authorized by law, rather than with rules defining the range within which discretion may be exercised. Second, "[t]he accuracy of the statements made by the judge as to appellant's background and past practices was not challenged by appellant or his counsel, nor was the judge asked to disregard any of them or to afford appellant a chance to refute or discredit any of them by cross-examination or otherwise." 337 U. S., at 244. The precise question here—the burden of proof applicable to sentencing facts—was thus not before the Court in that case. Third, its rationale depended largely on agreement with an individualized sentencing regime that is significantly different from the Guidelines system. "*Williams* was decided in the context of a sentencing 'system that focuse[d] on subjective assessments of rehabilitative potential. . . .' Saltzburg, [Sentencing Procedures: Where Does Responsibility Lie?, 4 Fed. Sent. Rep. 248, 250 (1992)]." *United States* v. *Wise*, 976 F. 2d 393, 409 (CA8 1992) (Arnold, C. J., concurring in part and dissenting in part). As this Court has acknowledged, see *Burns*, 501 U. S., at 132, the Guidelines wrought a dramatic change in sentencing processes, replacing the very system that justified *Williams* with a rigid system in which, "[f]or most defendants in the federal courts, sentencing is what the case is really about." *Wise*, 976 F. 2d, at 409.

Even more than *Williams*, this Court, like all of the Circuits that have adopted the same approach as the District Courts in these cases, relies primarily on the misguided

5-to-4 decision in *McMillan* v. *Pennsylvania*, 477 U. S. 79 (1986). For the reasons stated in my dissent in that case, *id.*, at 95–104, I continue to believe that it was incorrectly decided and that its holding should be reconsidered. Even accepting its holding that the Constitution does not require proof beyond a reasonable doubt to establish a sentencing factor that increases the minimum sentence without altering the maximum, however, there are at least two reasons why *McMillan* does not dictate the outcome of these cases.

In *McMillan*, as in these cases, the defendant's minimum sentence was enhanced on the basis of a fact proved by a preponderance of the evidence. But in *McMillan*, the maximum was unchanged; the sentence actually imposed was within the range that would have been available to the judge even if the enhancing factor had not been proved. In these cases, however, the sentences actually imposed were higher than the Guidelines would have allowed without evidence of the additional offenses. The *McMillan* opinion pointedly noted that the Pennsylvania statute had not altered "the maximum penalty for the crime committed" and operated "solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm." *Id.*, at 87–88. Given the Court's acknowledged "inability to lay down any 'bright line' test" that would define the limits of its holding, *id.*, at 91, and its apparent assumption that a sentencing factor should not be allowed to serve as a "tail which wags the dog of the substantive offense," *id.*, at 88, see also *ante*, at 156–157, n. 2, the holding should not be extended to allow a fact proved by only a preponderance to increase the entire range of penalties within which the sentencing judge may lawfully exercise discretion.[4]

---

[4] I recognize that the shift from one Guideline range to a higher range does not produce a sentence beyond the statutory maximum. It does, however, mandate a sentence that is above the maximum that the judge

Moreover, *McMillan* addressed only the constitutionality of a statute the meaning of which was perfectly clear. Nothing in the text of the Sentencing Reform Act of 1984 even arguably mandates the result that the District Courts reached in these cases. Indeed, as JUSTICE BREYER points out in his separate concurrence, *ante*, at 159, the Sentencing Commission unquestionably has the authority to disallow the consideration of acquitted conduct. Similarly, the Commission could have chosen to set the burden of proof for sentencing proceedings at beyond a reasonable doubt without running afoul of the enabling legislation. Given the lack of a contrary command in the statute itself, as well as the complete absence of any pre-1984 precedent for establishing the range of a permissible sentence on the basis of a fact proved only by a preponderance of the evidence, the *McMillan* opinion which was announced in 1986 can shed no light on the meaning of the 1984 Act.

Nor does the Court's decision in *Witte* v. *United States*, 515 U. S. 389 (1995), dictate the answer to the question presented by these cases. I continue to disagree with the conclusion reached by the Court in *Witte*, that the Double Jeopardy Clause does not prohibit convicting and sentencing an individual for conduct that has been decisive in determining the individual's offense level for a previous conviction. But that is a different issue from the one here. The opinion in *Witte*, carefully and repeatedly, confined the Court's holding to the double jeopardy context. *Id.*, at 397 (defendant in this case "is punished, for double jeopardy purposes, only for the offense of which the defendant is convicted"); *id.*, at 399 (disputed practice is not "punishment for that conduct within the meaning of the Double Jeopardy Clause"); *id.*, at 404 (practice "constitutes punishment only for the offense of conviction for purposes of the double jeopardy inquiry"). What is

___

would have had the legal authority to impose absent consideration of the "relevant conduct."

at issue in these cases is not whether a defendant is being twice punished or prosecuted for the same conduct, but whether his or her initial punishment has been imposed pursuant to rules that are authorized by the statute and consistent with the Constitution.

### IV

Putra's case involves "multiple offenses." She was charged with several offenses and received a sentence that was based on the judge's conclusion that she was guilty of each of these multiple offenses even though she had in fact been found guilty of only one offense. It is therefore appropriate to consider what the Sentencing Reform Act has to say about "multiple offenses."

In 28 U. S. C. § 994(*l*) Congress specifically directed the Commission to ensure that the Guidelines included incremental sentences for multiple offenses. That subsection provides:

> "The Commission shall insure that the Guidelines promulgated . . . reflect—
>
> "(1) the appropriateness of imposing an incremental penalty for each offense in a case *in which a defendant is convicted of*—
>
> "(A) *multiple offenses* committed in the same course of conduct . . . . ; and
>
> "(B) *multiple offenses* committed at different times . . . ." (Emphasis added.)

It is difficult to square this explicit statutory command to impose incremental punishment for each of the "multiple offenses" of which a defendant "is convicted" with the conclusion that Congress intended incremental punishment for each offense of which the defendant has been acquitted.[5]

---

[5] Courts upholding the Guidelines' relevant conduct provisions and their application in cases such as these have tended to focus their attention exclusively on those provisions in the statute that direct courts and the Commission to consider the "nature and circumstances of the offense" in

The Court, however, appears willing to read the statute's treatment of multiple offenses as though it authorized an incremental penalty for each offense for which the defendant was indicted if she is convicted of at least one such offense. The fact that the text of the statute expressly authorizes such incremental punishment "for each offense" only when a "defendant is convicted of . . . multiple offenses" conveys a far different message to thoughtful judges.[6]

In my opinion the statute should be construed in the light of the traditional requirement that criminal charges must be sustained by proof beyond a reasonable doubt. That requirement has always applied to charges involving multiple offenses as well as a single offense. Whether an allegation of criminal conduct is the sole basis for punishment or merely one of several bases for punishment, we should presume that Congress intended the new sentencing Guidelines that it authorized in 1984 to adhere to longstanding procedural requirements enshrined in our constitutional jurisprudence.

---

determining an appropriate sentence. 18 U. S. C. § 3553(a)(1); see also 28 U. S. C. § 994(d). In § 994(d), Congress granted the Sentencing Commission the authority to "consider whether [certain enumerated factors], among others, have any relevance" in establishing Guidelines for offenses. Some courts have concluded that the inclusion of the qualifier "among others" in this provision indicated that Congress intended the Commission to include anything it felt was relevant to the sentencing decision. See, e. g., United States v. Galloway, 976 F. 2d, at 420–421; United States v. Thomas, 932 F. 2d 1085, 1089 (CA5 1991), cert. denied sub nom. Pullock v. United States, 502 U. S. 895, and Samuels v. United States, 502 U. S. 962 (1992).

But this provision cannot be read separately from the rest of the statute. The clear congressional directive concerning sentencing for "multiple offenses" must be read as an important limit on the "othe[r]" factors that can be considered relevant to determination of an offense level.

[6] Some judges have concluded, in large part because of this provision, that the Guidelines' relevant conduct rules are outside the scope of the authority Congress granted to the Commission. See Galloway, 976 F. 2d, at 430–431 (Beam, J., dissenting); United States v. Davern, 970 F. 2d 1490, 1507 (CA6 1992) (Merritt, C. J., dissenting).

The notion that a charge that cannot be sustained by proof beyond a reasonable doubt may give rise to the same punishment as if it had been so proved is repugnant to that jurisprudence.

I respectfully dissent.

JUSTICE KENNEDY, dissenting.

A case can be made for summary reversal here, based on such factors as the conflict between the rationale of the Court of Appeals for the Ninth Circuit and the rationale of this Court in *Williams* v. *New York*, 337 U. S. 241 (1949), and, to a lesser extent, in *Witte* v. *United States*, 515 U. S. 389 (1995); the conflict the Ninth Circuit created, without considering en banc its departure from the rule followed in all other Circuits; and the lack of any clear authority to constrain the sentencing judge as the Court of Appeals seeks to do.

On the other hand, it must be noted the cases raise a question of recurrent importance in hundreds of sentencing proceedings in the federal criminal system. We have not decided a case on this precise issue, for it involves not just prior criminal history but conduct underlying a charge for which the defendant was acquitted. At several points the *per curiam* opinion shows hesitation in confronting the distinction between uncharged conduct and conduct related to a charge for which the defendant was acquitted. The distinction ought to be confronted by a reasoned course of argument, not by shrugging it off.

At the least it ought to be said that to increase a sentence based on conduct underlying a charge for which the defendant was acquitted does raise concerns about undercutting the verdict of acquittal, concerns noted by JUSTICE STEVENS and the other federal judges to whom he refers in his dissent. If there is no clear answer but to acknowledge a theoretical contradiction from which we cannot escape because of overriding practical considerations, at least we ought to say so.

Finally, as JUSTICE STEVENS further points out, the effect of the Sentencing Reform Act of 1984 on this question deserves careful exploration. This is illustrated by the fact that JUSTICES SCALIA and BREYER each find it necessary to issue separate opinions setting forth differing views on the role of the Sentencing Commission.

For these reasons the cases should have been set for full briefing and consideration on the oral argument calendar. From the Court's failure to do so, I dissent.