UNITED STATES of America,
Plaintiff—Appellee,

v.

Che Keung LING, aka Paul Ling,
Defendant—Appellant.

No. 01–30374.

D.C. No. CR–98–0220–BJR.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 2002.

Decided Nov. 18, 2002.

656

Before HAWKINS and GOULD, Circuit Judges, and WARE,* District Judge.

* Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation.

MEMORANDUM **

Che Keung Ling appeals the district court's denial of his motion to withdraw his guilty plea following his plea to using and trafficking in counterfeit credit cards, in violation of 18 U.S.C. §§ 1029(a)(1) and (a)(5). He also appeals his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court's denial of Ling's motion to withdraw his guilty plea and we affirm Ling's sentence.

█ The district court did not abuse its discretion in denying Ling's motion to withdraw his guilty plea. In reviewing the record of the plea hearing we find no evidence which demonstrates any significant question as to either the voluntariness or validity of Ling's plea before the Magistrate Judge, which was accepted and entered by the District Judge. During the plea colloquy, Ling received a fair opportunity to ask questions of the Magistrate Judge and to consult his counsel. The Magistrate Judge asked clear and direct questions of Ling with respect to the matters set forth in Fed.R.Crim.P. 11(c) and (d). Ling answered each question and repeatedly professed his understanding and knowledge of the charges that were being levied against him as well as the guilty plea he was making. At the conclusion of the hearing, Ling expressly stated, "I plead guilty." A defendant's solemn declaration in open court at a plea colloquy carries a strong presumption of veracity. *United States v. Rubalcaba,* 811 F.2d 491, 494 (9th Cir.1987) (citations omitted). In the instant case, there is no evidence in the record to counter this presumption.

█ Any failure by the Magistrate Judge to specifically advise Ling about the role of relevant conduct at sentencing, was harmless error and not sufficient to warrant a reversal of the district court. *See United States v. Ramos,* 923 F.2d 1346, 1357–58 (9th Cir.1991), *abrogated on other grounds by United States v. Ruiz,* 257 F.3d 1030 (9th Cir.2001) (concluding that failure to inform defendant of the applicability of the guidelines is harmless as long as defendant is informed of the applicable statutory minimum and maximum). At the plea hearing, the Magistrate Judge expressly advised Ling of the maximum penalties he could face by pleading guilty to Counts I and VII of the Superseding Indictment. Ling's former counsel submitted an affidavit stating that she met with him several times between March 2000 and August 2000, and advised him of the "relevant conduct provisions" in the Guidelines and their potential impact on his sentence.

█ The district court did not abuse its discretion in its denial of Ling's motion to withdraw his plea without first holding an evidentiary hearing. Ling failed to demonstrate that a significant question existed as to the voluntariness or general validity of his guilty plea to warrant holding such a hearing.

█ The district court's calculation of the total fraud loss amount in this case was not clearly erroneous. In credit card fraud cases, the Guidelines provide an enhancement of the offense level for losses exceeding $2,000. U.S.S.G. § 2F1.1(b) (1998).[1] An eleven-point increase is applicable where fraud losses amount to between $800,000 and $1,500,000. U.S.S.G.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. This provision was deleted by consolidation with U.S.S.G. § 2B1.1 in 2001. However, this consolidation would not affect Ling's sentence as the penalties were increased when the provisions were consolidated.

§ 2F1.1(b)(1)(L–M). "The loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based on ... the revenues generated by similar operations." U.S.S.G. § 2F1.1, note 8. *United States v. Watson* 118 F.3d 1315, 1319 (9th Cir.1997) (affirming calculation that multiplied average of known actual losses by total number of units).

It is undisputed that the actual dollar loss resulting from 179 of the 558 access devices seized from Appellant's home was $440,240.25. The amount of loss attributable to the remaining 379 access devices was not ascertainable. The district court imputed a loss amount to the remaining access devices by determining the average loss per device from those where the amount of loss was known, i.e. $2,459.44 per device. The court multiplied this average loss by the remaining 379 devices for a total loss attributable to the remaining devices of $932,127.76. The district court's method for calculating the total loss amount in this case was reasonable.[2]

The district court did not commit clear error in adjusting Ling's sentence upward three levels under U.S.S.G. § 3B1.1(b) for his managerial role in the offense. Ling argued that the enhancement was not supported by sufficient evidence because the Government introduced hearsay testimony at the sentencing hearing.

The Guidelines state that: ·"If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." U.S.S.G. § 3B1.1(b). The district court must only consider evidence that bears a "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). At a minimum, the facts must be proved by a preponderance of the evidence. *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997).

■ The record contains an adequate basis for the district court's finding that Ling occupied a managerial role. Ling made proffers in various investigative interviews, including a statement that he was the head of the "Seattle branch" of the Dai Jun Hai, a nationwide organization engaged in credit card fraud. Ling was also able to identify other branches of the Dai Jun Hai in San Francisco, Los Angeles, Oakland, Vancouver, and New York. Ling drew a simple organizational chart of people working with him or under him in the Dai Jun Hai for federal authorities. Moreover, he was observed receiving packages that were sent to senior members of the Dai Jun Hai. He admitted faxing information to, receiving cash payments from, and traveling with Ming, another senior member of the Dai Jun Hai, as part of a plan to transmit credit card information to New York from his home in Seattle. Ling's fingerprints were found on a package sent to Panama containing 10 counterfeit credit cards. The fax machine used in the New York plan was found in a search of Ling's residence. Over 500 handwritten and faxed account numbers on paper bearing his fingerprints were also found, along

---

**2.** Of the 379 access devices, for which an exact actual loss could not be ascertained, 31 were blank credit cards that were not yet encoded (making up for $76,242.64 in "intended" as opposed to "actual" losses) and, therefore, not yet in circulation. That these cards were not circulated raises concerns whether the average loss attributable to circulated cards have been applied to them. However any error in imputing a loss to the blank cards was harmless because if we were to subtract $76,242.64 from the total loss amount arrived at by the district court, neither Ling's sentence nor his offense level would be affected.

with 112 counterfeit credit cards, other cards reencoded with new numbers, encoding equipment, a shredder used for destroying credit cards, blank credit cards, and fake identification cards.

The district court did not rely on hearsay evidence in enhancing Ling's sentence under U.S.S.G. § 3B1.1. At the sentencing hearing, the district court found that "[Appellant] clearly saw things that put him in a role that far exceeds somebody who's just using a credit card ... [T]he proffer that [Appellant] offered makes it very, very clear what his role was." E.R. 9:127–28. Accordingly, the district court did not rely on hearsay testimony in making its determination, but rather on Appellant's own proffer and prior admissions.

■ Next, Ling appeals the district court's increase of his offense level by two levels for false denials of conduct. The Guidelines state that:

"If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels."

U.S.S.G. § 3C1.1.

This adjustment applies to "committing, suborning, or attempting to suborn perjury." *Id.* at Note 4(b). The district court did not commit clear error in finding that Ling perjured himself during the sentencing hearing. The district court's findings were based on Ling's own prior admissions, as well as physical evidence presented by the Government at the hearing.

For example, Ling denied being involved with the Dai Jun Hai even though he was able to re-produce an organizational chart of the Dai Jun Hai for federal officers. Ling denied using Lui's post office box in Seattle, even on dates where federal officers observed him doing so, and denied sending any package to Panama or having someone else send a package to Panama, even though his fingerprints were found on its contents. When Ling was asked about the credit cards and the written account numbers found in his residence, he denied owning these items and denied touching the papers, despite the presence of his fingerprints on them. Also, Ling denied ever using the fax machine found in his residence despite his prior admissions. Ling denied ever saying he was the head of the Seattle branch of the Dai Jun Hai despite his proffered statement and denied having supported himself exclusively through counterfeit credit cards despite his prior admissions to that effect.

"[F]alse testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory" constitutes perjury and therefore qualifies for offense level enhancement for an obstruction of justice. *United States v. Dunnigan,* 507 U.S. 87, 92–94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). The district court found that Ling "testified inconsistently with the facts of the case." E.R. 9:126. The district court also noted: "The proffer that [Appellant] offered makes it very, very clear what his role was, and I really do find that the two points for obstruction of justice is appropriate." E.R. 9:128. Based upon these findings, the district court did not commit clear error in enhancing Ling's sentence for an obstruction of justice.

■ Finally, at sentencing, the district court refused to grant Ling a three-level downward adjustment for acceptance of responsibility. The Guidelines state that:

"(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

"(b) If the defendant ... has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) timely providing complete information to the government concerning his own involvement in the offense; or (2) timely notifying authorities of his intention to enter a plea of guilty, ... decrease the offense level by an additional 1 level."

U.S.S.G. § 3E1.1.

The district court did not commit clear error by refusing to grant Ling a downward adjustment pursuant to § 3E1.1. Ling's testimony at the sentencing hearing was inconsistent with a genuine acceptance of responsibility. Despite the overwhelming evidence of his criminal activity and his own prior admission of guilt, At the hearing, Ling denied almost any involvement in the credit card fraud for which he was charged.

Ling also contends that his guilty plea in and of itself constitutes a sufficient acceptance of responsibility. Ling offers no authority that would support such a position. To the contrary, the Application Notes to the Guidelines state in pertinent part that:

"Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct), will constitute significant evidence of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. *A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.*"

USSG § 3E1.1, note 3 (emphasis added).

While Ling pled guilty at the plea hearing before the Magistrate Judge, he later denied being involved with the Dai Jun Hai and denied almost all of the relevant conduct described above at his sentencing hearing. Thereafter, the district court found:

[G]iven what I've heard today, and [Appellant's] testimony, I cannot in good conscience find that he has accepted responsibility. He has really testified inconsistently with the facts of this case.

His fingerprints have been found not once, not twice, but many times on both the package contents and the notebooks....

This is an individual who, based upon what was found in his house, is far more involved. He had an encoder. The laptop was in his house. The blank credit cards were in his house....

E.R. 9:127.

The record clearly demonstrates that the district court possessed sufficient grounds to find that Ling was not entitled to a three-level downward adjustment for acceptance of responsibility.

AFFIRMED.