**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-4493**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM LUTHER STEWART, a/k/a Luke Stewart,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Cameron McGowan Currie, District Judge.  (CR-03-1088-CMC)

Submitted:  May 16, 2006                    Decided:  June 16, 2006

Before NIEMEYER and KING, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

James M. Griffin, Columbia, South Carolina, for Appellant. Reginald I. Lloyd, United States Attorney, Dean A. Eichelberger, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

William Luther Stewart was convicted of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, and the district court sentenced him to 30 months' imprisonment.

The indictment charged that through a scheme and artifice to defraud, Stewart, together with his colleague, Edwin G. Blair, and their company, Media Fusion, LLC, obtained a loan of $1 million from SCANA Corporation, a company that owns South Carolina Electric and Gas, to fund implementation of a new technology that Stewart had allegedly developed. In particular, Stewart was charged with misrepresenting the fact that he had successfully developed a technology by which to transmit voice, video, and data over the power grid, and, to make his representations credible, with misrepresenting his credentials and his relationships with other major technology companies and institutions, such as MIT, NASA, the Defense Advanced Research Projects Agency, Microsoft, and San Diego Gas and Electric. The indictment also charged that in furtherance of the scheme, Stewart and Blair sent a fax from Texas to SCANA in South Carolina, which contained projected monthly milestones and a budget for implementation of the technology.

The jury found Stewart guilty of the charge, and the district court entered a judgment of conviction and the 30-month sentence on May 6, 2005.

On appeal, Stewart contends (1) that the evidence was insufficient to support the verdict; (2) that the district court abused its discretion in admitting letters from NASA and a U.S. Attorney in Mississippi, confirming, after the loan had already been made to Stewart, the inaccuracy of some of Stewart's misrepresentations; and (3) that the district court erred in sentencing by applying a $1 million-loss figure when Stewart was acquitted of the specific count charging that his scheme caused the transmission of $1 million from South Carolina to Texas.

For the reasons that follow, we affirm.


I

Stewart contends first that the government failed to present evidence sufficient to convict him, arguing that there was no evidence that he created or directed the sending of the fax, that he participated in the misrepresentations, and that the misrepresentations were false.

Taking the evidence in a light most favorable to the government, however, we believe that there was substantial evidence to support Stewart's conviction. Even though the fax was sent by Blair, the jury could reasonably have believed that Stewart directed Blair to send the fax or that he assisted Blair in doing so. Stewart and Blair were the two principals of Media Fusion and were constant companions in obtaining the loan from SCANA. The fax

furthered the scheme to defraud SCANA because SCANA officials requested the financial information contained in the fax before they made their loan and testified that they would not have loaned Media Fusion the $1 million if they had known that the technology was not ready for immediate installation. The fax implied that it was developed and ready for installation because the fax minimized future costs for research and development and forecasted revenue-producing consumer use within 12 months of the loan. In addition, the jury could reasonably have agreed with SCANA officials who testified that Stewart constantly led them to believe that the technology was more fully developed than it actually was. The officials stated that Stewart had told them that the technology was "proven technology" capable of near-term commercialization. The evidence showed that in actuality, however, Stewart had never tested the technology on a power line to prove it could pass digital signals through transformers. Even if the jury believed Stewart that he had done some testing, he testified that he had only tested some individual components of the technology, and not the technology as a whole. In light of the testimony that SCANA officials told Stewart they only were interested in ready-to-market technology, the jury could have inferred an intent to defraud from Stewart's repeated misrepresentations. From our review of the record, we conclude that the jury had ample evidence on which to convict Stewart on the § 1343 charge.

Stewart also contends that the district court abused its discretion in admitting into evidence a 1999 letter from NASA and a 2000 letter from the Department of Justice because the letters were dated after SCANA had made the $1 million loan to Media Fusion. The government, however, offered the letters to demonstrate that part of the scheme included Blair's misrepresentations about Media Fusion's relationship with NASA made to forestall SCANA from recalling the $1 million loan. We agree that these letters were relevant evidence of intent to mislead SCANA with the "design[] to lull the victims into a false sense of security [and] postpone their ultimate complaint to the authorities." United States v. Lane, 474 U.S. 438, 451-52 (1986) (quoting United States v. Maze, 414 U.S. 395, 403 (1974)). We disagree with Stewart's contention that the letters were also unduly prejudicial because they contained indirect evidence of matters on Media Fusion's website. The district court agreed with Stewart in noting that the letters' references to information found on a website failed the best evidence rule. The court received them, however, for a limited purpose and not for the substantive evidence of the content of Media Fusion's website, and in order to be sure that the documents were received for that limited purpose, the district court gave the jury a limiting instruction. In these

circumstances, we do not believe that the district court abused its discretion.

III

Finally, Stewart contends that the district court erred in calculating the amount of loss in determining his sentencing guidelines range. Finding that SCANA's $1 million loan was "the value of the money, property, or services unlawfully taken," U.S.S.G. § 2F1.1 App. Note 8 (Nov. 1998), the district court increased Stewart's offense level 11 levels, resulting in a sentencing guideline range of 30-37 months' imprisonment. Stewart argues that because he was not convicted of Count 5, which charged him with wire fraud for SCANA's $1 million loan, the court could not consider the amount of the loan as relevant conduct. The jury's acquittal, however, was based on a failure of proof under a standard of beyond-a-reasonable-doubt, and in sentencing, the district court need only have found the loss of the $1 million by a preponderance of the evidence. Accordingly, in determining the appropriate sentencing guideline, the court was entitled to consider acquitted conduct as relevant conduct. See United States v. Watts, 519 U.S. 148, 157 (1997).

Moreover, the evidence supported the finding that $1 million was the proper amount of loss. Application Note 8 to U.S.S.G. § 2F1.1 (Nov. 1998) explains that in determining the loss, the court

should consider the commentary to U.S.S.G. § 2B1.1, which provides that "Where the offense involved making a fraudulent loan or . . . other unlawful conduct involving a loan . . ., the loss is to be determined under the principles set forth in the commentary to section 2F1.1." U.S.S.G. § 2B1.1 App. Note 2 (Nov. 1998). The commentary to § 2F1.1 describes how the nominal loss -- in this case the amount of the loan -- can overstate the actual loss when the defendant has repaid some of the loan or collateralized it with property that is not worthless. See U.S.S.G. § 2F1.1 App. Note 8 ("If a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan"). The district court, however, concluded that there were no such offsets because as of sentencing the loan remained uncollected and because Media Fusion had provided no collateral.

Stewart argues that SCANA was effectively a "'strategic' partner" with Media Fusion and thus recovered some value from the loan because SCANA put the money to use in the common enterprise "in an attempt to commercialize defendant's technology." The district court, however, reasonably found that SCANA received no offsetting value from these efforts. The technology never became commercially viable and never provided any benefit to SCANA.

Because there was no repayment of the loan, no collateral to secure its repayment, or no other expectancy to reduce its outstanding amount, the district court did not clearly err in finding for sentencing that the loss was $1 million.

\* \* \*

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not aid in the decisional process.

<u>AFFIRMED</u>