[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 9, 2012
JOHN LEY
CLERK

No. 11-11039
Non-Argument Calendar

_____

D.C. Docket No. 1:10-cr-20438-DMM-3


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARGELIS LICONA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 9, 2012)

Before TJOFLAT, EDMONDSON and PRYOR, Circuit Judges.

PER CURIAM:

Argelis Licona appeals her convictions and sentence of 144 months of imprisonment for committing wire fraud, 18 U.S.C. § 1343, and conspiring to commit wire fraud, id. § 1349, while defrauding mortgage institutions. Licona argues that the district court plainly erred by allowing the government to ask Licona if other witnesses were lying and to accuse Licona of disclosing a secret grand jury subpoena. Licona also challenges the findings of the district court that she obstructed justice, held a leadership role in the fraud, and caused a loss between $7 and $20 million. We affirm.

Licona argues that the district court plainly erred when it allowed the government, without objection, to cross-examine Licona about whether its witnesses were lying, United States v. Schmidt, 634 F.3d 1247, 1268 (11th Cir. 2001), and to suggest that Licona was prohibited from "disclos[ing] the existence of a secret grand jury subpoena," see 18 U.S.C. § 3322, but the errors did not affect Licona's substantial rights especially in the light of the overwhelming evidence of her guilt, see United States v. Phaknikone, 605 F.3d 1099, 1109 (11th Cir. 2010). Licona's coconspirators, Zudhi Abud and Oscar Ramos, testified that Licona recruited Abud and other persons to serve as straw buyers in real estate transactions executed by Ramos through his company, Alliance Mortgage Investment; received commissions for recruiting those straw buyers; and made

2

false representations to mortgage companies that straw buyers held positions with and received salaries from Licona's company, Miaferchill. Lewis Sellars, an investigator for the United States Attorney's Office, testified that Licona deposited checks made payable to her from Alliance and another of Ramos's businesses, Alternative Renovation, into a corporate account for Edcar Repairs and Remodeling; served as a mortgage broker on fraudulent loan applications; and issued three checks between $5,000 and $20,000 from Edcar to pay three straw buyers for using their identities on four fraudulent loan applications. Licona admitted that she received a commission for referring Abud to Ramos; that Abud said he was being paid $10,000 by Ramos; and that she "went directly" to coconspirator Theresa Gonzalez about a secret grand jury subpoena related to the mortgage fraud. Licona also made other inconsistent statements that the jury could consider as substantive evidence of her guilt, United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995), including testifying that she received a $5,000 commission for referring Martha Dieguez to Gonzalez allegedly for tailoring services, but later testifying that she cashed the $5,000 check for Gonzalez to pay Dieguez. Although the government in closing argument returned to the theme of its improper cross-examination of Licona about its witnesses allegedly lying, Licona argued at length that the witnesses for the government were indeed lying.

The government did not argue in closing that Licona had disclosed a grand jury subpoena. And Licona did not request a jury instruction about either issue.

The district court did not clearly err by enhancing Licona's sentence for obstructing justice, organizing or leading the mortgage fraud, and causing a loss between $7 and $20 million. Licona obstructed justice by warning Gonzalez that their conspiracy was under investigation and providing incredible testimony in which she disclaimed any involvement in the mortgage fraud. See United States Sentencing Guidelines Manual § 3C1.1 & cmt. n.4 (Nov. 2010). Licona challenges the finding that she committed perjury based on Abud's testimony after being acquitted of charges involving him, but "a sentencing court may consider conduct of which a defendant has been acquitted." United States v. Watts, 519 U.S. 148, 154, 117 S. Ct. 633, 636 (1997). Licona also acted as a leader or organizer of the mortgage fraud by recruiting and paying straw buyers, misrepresenting to mortgage companies that straw buyers were employed by Miaferchill, and processing fraudulent transactions through Edcar. See U.S.S.G. § 3B1.1(a) & cmt. n.4. Because Licona "admittedly recruited buyers" for a "conspiracy [that she knew] had already been organized by Oscar Ramos," she likewise was responsible for the losses stemming from the reasonably foreseeable acts of her coconspirators and the fraud she committed independently through

4

Edcar.  <u>See</u> <u>id.</u> § 2B1.1(b)(1)(K); <u>United States v. McCrimmon</u>, 362 F.3d 725, 731–32 (11th Cir. 2004).

We **AFFIRM** Licona's convictions and sentence.