IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 1, 2008

## STATE OF TENNESSEE v. JOHN DAVID MCDANIEL

**Direct Appeal from the Circuit Court for Obion County**
**No. CO7-172      William B. Acree, Jr., Judge**

---

**No. W2008-00008-CCA-R3-CD  - Filed October 2, 2008**

---

The defendant, John David McDaniel, was convicted of three counts of fraudulently obtaining a Schedule II controlled substance, one count of felony evading arrest, one count of misdemeanor evading arrest, and one count of theft of property with a value of less than $500. The defendant was sentenced to four years for his convictions for fraudulently obtaining a Schedule II controlled substance and felony evading arrest. He received a sentence of 11 months and 29 days for his convictions for misdemeanor evading arrest and theft of property with a value of less than $500. The defendant filed a motion for new trial which was denied after a hearing before the trial court. The defendant filed a timely notice of appeal. The defendant argues on appeal that the trial court erred by sentencing the defendant to the maximum sentence within the range for his convictions. In response, the state argues that the appellate court does not have jurisdiction to consider the defendant's appeal. The state further argues that the sentencing determination made by the trial court was not in error. Following our review of the parties' briefs, the record, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Joseph P. Atnip, District Public Defender, and William K. Randolph, Assistant District Public Defender, for the appellant, John David McDaniel.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. BACKGROUND

James Turner testified that he was employed as a pharmacist at the Kenton Drug Company in Kenton, Tennessee, on February 19, 2007. According to Mr. Turner, on that day, a prescription

for Lortab was presented to the pharmacy for a patient named "David McDaniel." Mr. Turner explained that Lortab was the brand name for the narcotic pain reliever Hydrocodone, a Schedule II controlled substance. The prescription was written to permit one refill.

Mr. Turner further testified that on February 26, 2007, another prescription for Lortab was submitted to the pharmacy for a patient with the name "Linda Moran." The prescription was marked "no refills." Shortly thereafter, Mr. Turner was contacted by another pharmacist who alerted Mr. Turner to the possibility that the two prescriptions were fraudulent. Mr. Turner faxed a copy of the prescriptions to Dr. Cox, the doctor who had purportedly issued the prescriptions. Dr. Cox informed Mr. Turner that he had not written prescriptions for Mr. McDaniel or Ms. Moran. Three or four days later, Mr. Turner was contacted over the telephone about a refill of the defendant's prescription. Mr. Turner spoke with the defendant over the phone and informed him that it was too soon for the prescription to be refilled. The defendant told Mr. Turner he was going out of town and needed the medicine. Mr. Turner informed him that he would make an exception for the defendant. The defendant indicated that he would arrive within an hour to pick up his refill.

Mr. Turner testified that after ending his phone call with the defendant, he walked across the street and spoke with Kenton Police Chief Steve Meeks. Chief Meeks came to the store and waited for the defendant to come and pick up his prescription. Within the hour, the defendant arrived at the pharmacy and Mr. Turner filled the prescription. Immediately thereafter, Chief Meeks walked up behind the defendant and informed him that he was under arrest for forging prescriptions. The defendant broke free from Chief Meeks when he attempted to place him in custody and ran from the store. Mr. Turner and Chief Meeks chased the defendant from the store to his car parked nearby. According to Mr. Turner, he last saw the defendant as he drove off with a Kenton Police Officer in pursuit.

Gregory Cox testified that he was a medical doctor in Fulton, Kentucky. He identified the two fraudulent prescriptions written for Lortab and confirmed that his signature on the prescriptions had been forged. Dr. Cox stated that he did not know how the defendant obtained the prescriptions, because the prescription pads were normally kept in a locked safe in his office.

On cross-examination, Dr. Cox testified that Lortab was a controlled substance because it was addictive. He stated that he would never write a prescription for 20 pills per day because Lortab also contained Tylenol, a drug which is toxic to the liver in large amounts. Dr. Cox opined that if the defendant consumed twenty Lortab per day, he would be too impaired or intoxicated to drive safely. Dr. Cox acknowledged that it was possible for the defendant to develop a tolerance for Lortab. He conceded that with a higher tolerance, it might be possible for the defendant to consume a higher quantity of Lortab and maintain functionality for certain tasks.

Steve Meeks testified that he was the Chief of the Kenton Police Department when he was contacted by Jim Turner on March 2, 2007, and informed that an individual was coming to the pharmacy to pick up a forged prescription. Chief Meeks alerted Officer Bradford, who waited outside the pharmacy in a patrol car. Chief Meeks entered the pharmacy and waited in an office for the defendant to pick up the prescription. The defendant arrived within the hour, and as Mr. Turner filled the prescription, one of the pharmacy employees came to the office and informed Chief Meeks

2

that the defendant was at the counter. Chief Meeks walked up to the defendant at the counter and advised him that he was under arrest for forging prescriptions.

Chief Meeks testified that the defendant ran from the store, dropped his hat, sunglasses, and watch before jumping into his car. Chief Meeks was able to determine the make, color and partial license plate of the defendant's car. From that information, he was able to ascertain the defendant's identity and determine that the defendant lived near Union City. Chief Meeks contacted the Union City Police Department who subsequently apprehended the defendant in Union City. Chief Meeks traveled to the Union City Police Department and was present during the questioning of the defendant. The defendant admitted forging the prescriptions and attempting to get them filled at the Kenton Drug Company. Chief Meeks identified the defendant as the man he struggled with in the pharmacy.

Thomas Bradford testified that he was an police officer with the Kenton Police Department on March 2, 2007 when Chief Meeks called him on his cell phone and asked him to bring the patrol car to the pharmacy. He stated that he waited outside until he saw the defendant run from the pharmacy with Chief Meeks and Mr. Turner in pursuit. Officer Bradford stated that he attempted to block the defendant's car, but the defendant was able to pull away from the curb and drive away. Officer Bradford activated his blue lights and pursued the defendant out of town at speeds up to 100 miles per hour. After briefly chasing the defendant, Officer Bradford broke off his pursuit due to his concern for public safety.

Investigator Chris Cummings of the Union City Police Department testified that on March 2, 2007, he was alerted by Chief Meeks of the Kenton Police Department about the defendant's actions and notified that an arrest warrant had been issued. Investigator Cummings located and arrested the defendant at Linda Moran's house. Investigator Cummings stated that Linda Moran was the defendant's sister. A search of the defendant's vehicle was performed incident to the arrest. Officers recovered a prescription pad from the Hillview Medical Center. Officers also recovered scraps of notebook paper on which it appeared that the defendant had practiced writing prescriptions. Investigator Cummings questioned the defendant who voluntarily agreed to give a statement. The defendant admitted to writing two prescriptions for ninety Lortab. The defendant wrote one prescription under the name "David McDaniel," and the other prescription under the defendant's sister's name, "Linda Moran." In his written statement, the defendant asserted that he did not steal the prescription pad. He claimed that the pad was given to him by a friend whom he refused to name. In his statement, the defendant acknowledged that he practiced writing the prescriptions on a piece of notebook paper which was recovered from his car. Investigator Cummings testified that during questioning and while making his statement to police officers, the defendant was calm and cooperative and did not appear to be intoxicated or impaired. Investigator Cummings identified the defendant as the individual who made the statement, initialed it, and signed it.

Chanee McDaniel testified that the defendant was her husband. She stated that the defendant had struggled with an addiction to Lortab for at least two years. She stated that the defendant took "a lot" of Lortab. According to Ms. McDaniel, if the defendant did not have his pills, he became unbearable. The defendant had a ruptured disc in his back which caused him immense pain. Ms.

McDaniel stated that since his arrest, the defendant had been placed on a different drug for the last month called Suboxen which was prescribed for chronic pain relief to individuals who did not respond well to narcotic pain medication. She stated that over the last month, the defendant had worked cleaning and rebuilding houses.

The defendant testified that he had first been placed on Lortab in 1997 due to a back injury. He stated that the L5 disc in his back had ruptured, but at the time was not considered serious enough to warrant surgical repair. He stated that within a year or two, the ruptured disc worsened dramatically and required surgery in 2000. Despite surgery, the defendant continued to suffer chronic, severe pain. The defendant stated that he needed another surgery, but did not have insurance to pay for the operation.

The defendant testified that after his initial injury, his doctor had legitimately prescribed Lortab, 120 per month, or four per day, for his chronic back pain. In addition, the doctor prescribed Soma, a muscle relaxer, three times per day. The defendant confessed that he had built up a tolerance for and addiction to Lortab which caused him to commit the offenses in the instant case. He stated that he did not remember much about March 2, 2007. The defendant testified that at the time of his arrest, he was taking twenty ten milligram Lortab pills per day, the highest dosage permitted by prescription. The defendant stated that since his arrest, he had ceased taking Lortab and currently took Suboxen, a non-narcotic pain reliever.

On cross-examination, the defendant acknowledged that he may have forged the two prescriptions, but he was unable to recall. He stated that he did not remember taking the prescriptions to the pharmacy on February 19th and February 26th. He also did not remember telling Investigator Cummings that he practiced forging the prescriptions on the notebook paper found in his car. He was unable to recall contacting the pharmacy for a refill or going to pick up the refill at the pharmacy on March 2nd. He also could not remember running from Chief Meeks or driving at high speeds to evade Officer Bradford. However, the defendant remembered his arrest by Investigator Cummings, but he did not recall making, initialing or signing his statement.

The defendant was found guilty of four Class D felonies, including three counts of fraudulently obtaining a controlled substance and one count of felony evading arrest. The defendant was also convicted of misdemeanor evading arrest and theft of property with a value of less than $500, both Class A misdemeanors. At sentencing, the trial court determined that the defendant had two prior convictions: a twenty-year old felony, and a recent Class C misdemeanor. The court further determined that the defendant was a Range I, standard offender. The court noted that in the recent case where the jury found the defendant guilty of a Class C misdemeanor, the defendant had been indicted for aggravated burglary, aggravated assault and aggravated robbery – all felony offenses. The court noted that it was looking beyond the jury verdict and found that the facts underlying the indicted offenses constituted prior criminal behavior. The trial court imposed a sentence of four years for his Class D felonies, and 11 months, 29 days for his Class A misdemeanor convictions based on the defendant's prior convictions and prior criminal behavior. The defendant's sentences were ordered to run concurrently for a total of four years in confinement. The defendant filed a timely notice of appeal.

## II. ANALYSIS

On appeal, the defendant argues that the trial court erred by sentencing the defendant to the maximum within the range for his felony convictions and to the statutory maximum for his misdemeanor convictions.

However, before we undertake review of the issue raised by the defendant, we must first address a threshold issue of jurisdiction raised by the state. Specifically, the state argues that this court does not have the jurisdiction to consider the defendant's appeal because the appellate record contains no written order denying the defendant's motion for new trial.

The Tennessee Rules of Appellate Procedure require us to determine in every case whether we have the jurisdiction to consider the appeal. Tenn. R. App. P. 13(b). In criminal cases, an appeal as a matter of right lies from a final judgment of conviction. Tenn. R. App. P. 3(b). An appeal may be initiated if filed within thirty (30) days of the date of final judgment. Tenn. R. App. P. 4(a). Rule 4(c) states that if the defendant files a timely motion for new trial, "the time for appeal for all parties shall run from entry of the order denying a new trial or granting or denying any other such motion or petition." Tenn. R. App. P. 4(c); *see State v. James Lee Foreman, II*., No. M2002-02595-CCA-R3-CD, 2004 WL 404696, at \*2 (Tenn. Crim. App. at Nashville, Mar. 4, 2004). In *Foreman*, this court concluded that "[u]ntil the trial court denies the motion for new trial, this [c]ourt does not have jurisdiction to hear the appeal." *Id.* In rendering its decision, the court in *Foreman* noted that in order for a denial of a motion for new trial to be valid, the court must issue a written order and the order must be entered into the court's minutes. *Id.*; *see also State v. Landy G. Kash*, No. 01C01-9705-CR-00179, 1998 WL 74352 (Tenn. Crim. App. at Nashville, Feb. 23, 1998) (internal citations omitted).

Upon review, we note that the appellate record in this case contains a copy of the defendant's motion for new trial and a transcript of the hearing held on the defendant's motion for new trial. Also included in the record is a copy of an "Order *Nunc Pro Tunc* Denying Motion for New Trial." This written order was filed with the court on May 28, 2008, and dates back to an order entered on the trial court's docket on December 5, 2007, denying the defendant's motion for new trial. The defendant's notice of appeal was filed in this case on December 28, 2007. The filing of the notice of appeal was well within the thirty-day period running from the date of the entry of the order on the trial court's docket. *See* Tenn. R. App. P. 4(a). Because this written order reflects the entry of the same order on the trial court's docket on December 5, 2007, the defendant's motion for new trial was properly denied. Therefore, we conclude that this appeal is properly before this court. *See* Tenn. R. App. P. (3); (4)(a)-(c).

We turn now to the issue raised by the defendant. The defendant argues that the trial court erred by improperly enhancing his sentences to the maximum within the range for his felony convictions and to the statutory maximum for his misdemeanor convictions. The defendant explains that in a prior case he was indicted for aggravated burglary, aggravated assault and aggravated robbery. However, after considering the evidence, a jury found him guilty of criminal trespass, a Class C misdemeanor. The defendant argues that the trial court improperly enhanced his sentences

5

after finding that the alleged facts surrounding the charges for which he had been acquitted in the prior case constituted "criminal behavior."

When a defendant challenges the length and manner of service of a sentence, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401. This presumption of correctness is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). Furthermore, we emphasize that facts relevant to sentencing must only be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000) (citing *State v. Carico*, 968 S.W.2d 280, 287 (Tenn. 1998)). If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. *See* Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. We will uphold the sentence imposed by the trial court if: (1) the sentence complies with our sentencing statutes, and (2) the trial court's findings are adequately supported by the record. *See State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001); *see also* Tenn. Code Ann. § 40-35-210. If this court determines that the sentence is erroneous, it "may affirm, vacate, set aside, increase or reduce the sentence imposed or remand the case or direct the entry of an appropriate order." Tenn. Code Ann. § 40-35-402(c).

The mechanics of arriving at an appropriate sentence are spelled out in the Criminal Sentencing Reform Act of 1989 and its amendments. The trial court is free to select any sentence within the applicable range so long as the length of the sentence complies with the purposes and principles of the Sentencing Act. *Id*. § 40-35-210; *see also State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (noting that such principles encompass themes of punishment fitting of the crime, deterrence, and rehabilitation). However, the trial court is required to consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (7) any statement the defendant wishes to make on his own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). Regarding the application of enhancement and mitigating factors, we find the following instruction by our supreme court succinct and helpful:

[A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion. Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened. Thus, even if a trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors. The appellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence.

*Carter*, 254 S.W.3d at 345-46.

Upon review of the available record, we note that the trial court enhanced the defendant's sentences based in part, upon its consideration of the underlying facts and circumstances surrounding the defendant's previous trial and conviction for misdemeanor criminal trespassing. Specifically, the court stated:

> [The defendant] was indicted in Case No. 7-70 in this court for several crimes, those being aggravated burglary, aggravated assault and aggravated robbery. Aggravated robbery is a Class B felony, aggravated assault and aggravated burglary are Class C felonies.
>
> [The defendant] went to trial. He was found guilty by the jury of a class C misdemeanor. In that particular case, the evidence was quite – or the verdict of the jury was a very inconsistent verdict. The evidence presented by the State in the case was that [the defendant] went into an elderly gentleman's home and forcefully robbed him and assaulted him, and broke into the home. The jury found him not guilty of those offenses; however, they did find him guilty of being there, because they found him guilty of the Class C misdemeanor of criminal trespass.
>
> I'm entitled to, under the sentencing laws, to consider evidence presented in another trial, even though that might – there may not be a conviction there. The Court is satisfied in that case that the evidence presented would have supported a conviction of aggravated robbery, aggravated assault and aggravated burglary.
>
> In short, the Court is considering that evidence in that other case in determining the sentence to be applied in this case; that is, criminal conduct in addition to that necessary to establish a range, sentencing enhancing factor number 1.

The trial court considered the offenses for which the defendant was acquitted in the prior trial as "criminal behavior" and used them as a basis for enhancement of the defendant's sentences. *See* Tenn. Code Ann. § 40-35-114(1). We note that our supreme court has previously concluded that a trial court may consider facts and circumstances arising in another case even if it results in an

7

acquittal of the charges against the defendant. *State v. Winfield*, 23 S.W.3d 279, 282-83 (Tenn. 2000). Specifically, our supreme court has stated:

> [A] verdict of acquittal does not preclude the [court] from considering facts underlying a charge for which there has been an acquittal, provided that the facts have been established by a preponderance of the evidence. [*See United States v. Watts*, 519 U.S. 148, 156 (1997)]. The rationale [is] twofold: first, an acquittal requires a finding of reasonable doubt by the jury but does not establish factual innocence; and second, facts relevant to sentencing must be proven by a preponderance of the evidence and not beyond a reasonable doubt. *Id.*

*Id.* at 282-83 (citing *United States v. Watts*, 519 U.S. 148, 156 (1997)). The supreme court further noted that allowing a sentencing court to "consider facts underlying a charge for which there has been an acquittal is also consistent with the overall statutory scheme under the Criminal Sentencing Reform Act of 1989." *Winfield*, 23 S.W.3d at 283. *See also State v. Walter Martin*, No. W2006-01148-CCA-R3-CD, 2007 WL 3005356, at *9 (Tenn. Crim. App. at Jackson, Oct. 16, 2007) *perm. app. denied* (Tenn. Apr. 7, 2008).[1] However, this court has been careful to acknowledge that "merely being arrested or charged with a crime is not 'criminal behavior' within the meaning of the statute." *Carico*, 968 S.W.2d at 287 (internal citations omitted).

Upon review of the record, it appears that the indictment and subsequent trial of the defendant occurred in the same trial court as in the instant case. As such, the trial court was uniquely positioned to consider the facts underlying the acquitted offenses. The trial court provided a brief recitation of those facts before determining that the defendant's criminal behavior would have supported the defendant's conviction on charges of aggravated robbery, aggravated assault and aggravated burglary. Thus, the trial court found that the facts underlying the prior offenses supported enhancement of the defendant's sentences beyond a reasonable doubt. This determination exceeds the standard set in *Winfield* that facts supporting enhancement on this basis must only be established by a preponderance of the evidence. *See Winfield*, 23 S.W.3d at 283. We conclude that the trial court's consideration of those underlying facts for the purpose of enhancing the defendant's sentences in the instant case was appropriate. Therefore, we discern no error in the trial court's enhancement of the defendant's sentences on this basis.

The trial court also enhanced the defendant's sentences based upon his two prior convictions. Specifically, the trial court stated:

---

[1] We note that the defendant argues that the trial court erred by considering the indicted offenses underlying the defendant's prior misdemeanor criminal trespassing conviction in violation of the United States Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). Contrary to the assertion made by the defendant, the Court's decisions in *Apprendi* and *Blakely* do not affect the trial court's authority or ability to apply this enhancing factor under the 2005 amendments to the Sentencing Act. The defendant was sentenced in 2007.

The Court finds that [the defendant] is a Range I standard offender. He has two prior convictions: one which occurred about 20 years ago, was a felony, and the other was a misdemeanor which occurred recently . . . .

. . . .

. . . I realize that one of the offenses occurred about 20 years ago when Mr. McDaniel was 21 years of age. I would not place particular significance on that, except for the – were it not for the most recent crime.

The sentencing scheme has been revised to permit the trial court discretion to adjust the defendant's sentences "as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." Tenn. Code Ann. § 40-35-210(c)(2)(2006). "[T]he trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." *Carter*, 254 S.W.3d at 343; *see also* Tenn. Code Ann. § 40-35-210(d). A defendant's sentence may be enhanced when "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1). We perceive no error in the trial court's reliance upon the defendant's prior convictions to enhance the defendant's sentences to the maximum within the statutory range. *See id.* Accordingly, we conclude that the trial court did not err by enhancing the defendant's sentence based upon its consideration of the facts underlying his prior, acquitted offenses, or based upon its consideration of his prior convictions. Therefore, the defendant is not entitled to relief as to this issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
J.C. McLIN, JUDGE

9