# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 7, 2014

## STATE OF TENNESSEE v. ANTONIO GALE

**Appeal from the Criminal Court for Shelby County**
**No. 12-02355     Chris Craft, Judge**

_____

**No. W2013-02772-CCA-R3-CD - Filed December 16, 2014**

_____

Defendant, Antonio Gale, was indicted by the Shelby County Grand Jury for two counts of aggravated rape. After a jury trial, Defendant was found guilty of the lesser-included offenses of rape in Count One and assault in Count Two. The trial court merged the convictions and sentenced Defendant to eleven years at 100% for the rape conviction. After the denial of a motion for new trial, Defendant seeks resolution of the following issues on appeal: (1) whether the evidence was sufficient to support the conviction of rape; and (2) whether the trial court abused its discretion in sentencing Defendant. After a thorough review of the record and applicable authorities, we determine that the evidence was sufficient to support the conviction for rape and that the trial court did not abuse its discretion in sentencing Defendant to eleven years for the conviction. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Tony N. Brayton (on appeal) and Robert Trent Hall (at trial), Memphis, Tennessee, for the appellant, Antonio Gale.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Abby Wallace, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

A.T., the victim, met Defendant in the fall of 2011.[1] She considered him a friend. The couple had consensual sex on at least one occasion after they met.[2] On the afternoon of December 16, 2011, Defendant called A.T. several times. He wanted A.T. to give him a ride somewhere. At around 11:00 p.m. that night, A.T. picked Defendant up at a Texaco gas station.

A.T. took Defendant to his home for a few minutes before he persuaded her to drive to another gas station. Defendant purchased something at the gas station then asked A.T. to take him to her house. Defendant told A.T. that his cousin would pick him up later.

A.T. took Defendant to her house. A.T.'s two children were not home that evening; they were staying the night with their grandmother. Defendant and A.T. sat in the living room talking for a short amount of time. A.T. hinted that Defendant should call his cousin as she was ready for Defendant to leave.

Defendant then made a telephone call during which he asked someone to come get him at A.T.'s house. Then, Defendant excused himself, and went to the restroom. When he returned, A.T. noticed that he had an empty beer bottle in his back pocket. The bottle came from the trash can. A.T. was frustrated and wanted Defendant to leave her house; she started yelling at him and even stood next to the door. She planned to lock the door when Defendant left.

Defendant dropped his coat on the floor and asked A.T. to pick it up. When A.T. bent over to pick up the coat, Defendant hit her on the left side of her face, knocking her into a "counter." Defendant closed the door to the house and told A.T. to "shut up." Defendant told A.T. that if she ever wanted to see her kids again, she would comply with his demands. Defendant took her keys, shoes, and phone and ordered her to sit in the corner of the living room. Defendant repeatedly told A.T. that he had a gun and that he would shoot her if she did not comply with his requests.

Defendant ordered A.T. to take her shirt off. She begged him to stop. Defendant picked up a large, two-pronged meat fork, similar to something that would be used on a grill, and told her that he was going to count to five and stab her if she did not comply. Defendant repeatedly told A.T. to do things and then threatened her with either the fork or a gun if she

---

[1] It is the policy of this Court to refer to victims of sexual crimes by their initials.

[2] A.T. explained that they "started" to have sex but she "stopped him" before the act was complete.

did not comply. While A.T. never actually saw a gun, she described that Defendant would reach into the pocket of his jacket when he referred to a gun.

After A.T. removed her shirt, Defendant forced her to the bedroom by threatening her with the grilling fork at fork-point. A.T. continued to try to reason with Defendant, to no avail. He instructed her to take off her clothing. Defendant then forced A.T. to have sexual intercourse. After Defendant ejaculated, he fell asleep.

A.T. waited for Defendant to fall asleep, went to the bathroom to clean herself up, put on some clothing, retrieved her belongings from Defendant's pocket, and ran out the front door. A.T. got into her car and called the police. Defendant exited the house about ten minutes later and tried to get A.T. to come back. A.T. pulled her car farther away from Defendant. Defendant walked away from the house.

The police arrived. An empty beer bottle was recovered from under the victim's bed. The grilling fork was located in the kitchen in the wooden knife block. A.T. did not immediately report the rape to police, claiming that she was in too much shock. A.T. admitted that "she wasn't sure if [she] was going to turn [Defendant] in or not" but later decided to do so "because he kept calling and texting."

After the police left, A.T. had a friend take her to the emergency room. Once there, she reported that she was raped and hit in the face. A.T. stated she did not "think [she] gave a name [of her attacker]." A.T. was re-interviewed by the police.

A.T. was taken to the Rape Crisis Center after she left the emergency room. An examination was performed and DNA evidence was collected. The DNA evidence was "consistent with a mixture" of DNA from A.T. and Defendant.

A.T. was shown a photographic lineup on December 17. A.T. did not identify any of the men in the lineup as the perpetrator. Defendant's picture was not in this photographic lineup. The next day, A.T. informed police that she found Defendant's work uniform and identification card in her car. Defendant was brought into the police station where he voluntarily gave a statement. The statement was introduced at trial.

In the statement, Defendant categorized his relationship with A.T. as "friends with benefits." Defendant admitted that he pushed and hit the victim and threatened her with a gun and a meat fork on the night of the incident but claimed that they apologized to each other then had both "oral" and "vaginal intercourse." Defendant also acknowledged that he and A.T. were using marijuana and cocaine that evening. Defendant reported that he fell asleep after having sex with A.T. and woke up to discover A.T. was sitting in her car outside.

According to Defendant, A.T. told him to lock the door on the way out. Defendant acknowledged that he hit A.T. in the face and threatened her with a grilling fork to try "to scare her." When asked if he "forcibly rape[d] this woman," Defendant "nodded his head up and down" and said, "This ain't good." Defendant was asked again if he "forcibly rape[d] [A.T.]," and he replied, "Yes, sir."

Defendant did not present any proof at trial. At the conclusion of the jury trial, the jury found Defendant guilty of the lesser-included offense of rape in Count One and the lesser-included offense of assault in Count Two.

The trial court held a separate sentencing hearing. At the hearing, Defendant did not present any evidence. The trial court enhanced Defendant's sentence on the basis of prior criminal convictions that showed, in the trial court's opinion, a sustained intent to violate the law. Additionally, the trial court determined that Defendant used a deadly weapon during the commission of the offense and that Defendant had previously failed to comply with the conditions of a sentence involving release into the community. The trial court rejected voluntary intoxication as a mitigating factor. The trial court merged Counts One and Two and sentenced Defendant to eleven years at 100% for the rape conviction.

On appeal, Defendant challenges the sufficiency of the evidence and his sentence.

*Analysis*

*Sufficiency of the Evidence*

Defendant contends that his conviction is "largely based upon the equivocal testimony of [A.T.]." Defendant admits he "cannot argue . . . that there is no evidence to support his conviction" when viewing the testimony of A.T. and his own statement to police but argues that "applying the reasonable doubt standard to the evidence . . . reveals that the evidence is insufficient to support his conviction." The State, on the other hand, argues that the jury accredited the testimony of the victim and the statement of Defendant and found that the evidence supported the conviction.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the

offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Rape is defined as "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances," some of which are "[f]orce or coercion is used to accomplish the act" or "[t]he sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent." T.C.A. § 39-13-503(a).

Viewing the testimony in the light most favorable to the State, the testimony from the victim indicated that Defendant sexually penetrated her against her will. Defendant then confessed to police about the rape. The DNA evidence showed the presence of a mixture of DNA from both Defendant and the victim. Defendant's argument that the victim's testimony is not credible and that this Court should apply the reasonable doubt standard is improper as that task was assigned to the jury. Since the jury found Defendant guilty of two lesser-included offenses, it is apparent that the jury determined some of the evidence was less than credible, as was their province. We determine that a rational trier of fact could have found the accused guilty of every element of rape beyond a reasonable doubt when presented with the evidence at trial. *See* Tenn. R. App. P. 13(e); *Jackson*, 443 U.S. at 319. Defendant is not entitled to relief on this issue.

*Sentencing*

Defendant submits that the trial court abused its discretion in determining his sentence. Specifically, he argues that the trial court failed to consider Defendant's remorse and cooperation with the police as mitigating factors. Additionally, Defendant complains that the trial court used information provided by Defendant in his pre-sentence report to enhance his sentence. The State insists that Defendant was properly sentenced.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we would have preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401 (2010), Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make on his own behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b),-103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706 n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, a sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute.

The trial court found that several enhancement factors applied: (1) "[Defendant] has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range"; (8) "[Defendant], before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community"; and (9) "[Defendant] possessed or employed a . . . deadly weapon during the commission of the offense." T.C.A. § 40-35-114(1),(8), and (9). While clearly stating that he agreed with the jury verdict, the trial court applied factor (9) despite the fact that the jury acquitted Defendant

of aggravated rape, finding that the "preponderance" of the evidence showed Defendant had a weapon at some point during the incident. *See State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000); *see also United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633 (1997) (concluding that facts relevant to sentencing may be established by a preponderance of the evidence rather than beyond a reasonable doubt); *State v. Jacob Haliburton*, No. W2010-00777-CCA-R3-CD, 2011 WL 5553804 (Tenn. Crim. App. Nov. 10, 2011); *State v. Quidon Clemons,* No. W2008-02216-CCA-R3-CD, 2010 WL 2612941 (Tenn. Crim. App. June 30, 2010). Additionally, the trial court considered Defendant's admitted cocaine and marijuana use. The trial court declined to apply several other enhancement factors that were suggested by the State and did not apply any of the mitigating factors relied upon by Defendant.

After a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Defendant's history and background, the mitigating and enhancement factors, and the principles of sentencing. "Because the application of enhancement and mitigating factors to adjust a sentence was rendered advisory by the 2005 amendments, we reiterate that the trial court may set a sentence anywhere within the applicable range so long as the sentence is consistent with the principles and purposes of the Act, regardless of the presence or absence of mitigating and enhancement factors." *State v. Christina Lee Jones Thomas*, No. E2013-01531-CCA-R3-CD, 2014 WL 3440687, at *13 (Tenn. Crim. App. July 14, 2014). Based on our review of the case herein, we conclude that application of enhancement factors (1), (8), and (9) to Defendant's conviction supports the trial court's discretionary decision to impose an enhanced sentence of eleven years. Additionally, the trial court properly considered the Defendant's admission in his presentence report that he used drugs in order to enhance his sentence. *See State v. Anthony Riggs*, No. M2007-02322-RM-CD, 2008 WL 1968826, at *4 (Tenn. Crim. App. May 7, 2008).

Defendant argues that he was remorseful and regretted his actions and the trial court's failure to acknowledge this as mitigation was improper. However, this alleged expression of sorrow was not argued at his sentencing hearing. The failure to apply mitigating factors does not render the sentence improper. The sentencing decision is affirmed.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed in all respects.

_____
TIMOTHY L. EASTER, JUDGE

-7-