Filed 8/16/16  P. v. Tan CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>YANQUN TAN,<br><br>        Defendant and Appellant. | C079141<br><br>(Super. Ct. No. 12F07161) |

Charged with murder, defendant Yanqun Tan was convicted by a jury of the lesser offense of voluntary manslaughter.  Sentenced to state prison to serve the upper term of 11 years, defendant appeals, contending the trial court abused its discretion in sentencing by improperly evaluating the aggravating and mitigating factors.  We conclude there was no abuse of discretion and affirm the judgment.

FACTS

Even though the victim, Ruji Fang, and defendant each had a spouse and family in China, they lived together as boyfriend and girlfriend in the United States after

1

entering the country on tourist visas, first in Las Vegas beginning in 2005 and then in Sacramento County since 2009. Defendant admitted she and the victim cultivated marijuana while in Sacramento County. In the fall of 2012, they had been arrested after the grow was discovered during a house fire apparently caused by the overuse and theft of electricity. In 2009, defendant and the victim began to argue, which family members witnessed.

On October 22, 2012, defendant arrived at a police station and stated the victim was dead in the house they had shared. Officers went to the house and discovered the victim dead in bed. His head was covered with a plastic bag using duct tape. Over this, another plastic bag with duct tape covered his head down to his waist. Blood splatter was found in the bedroom where the victim was found but no blood was found anywhere else in the house. He had several wounds on his face, on the back and sides of his head, an injury on the back of his right hand, and a broken cartilage in his nose. The victim died from blunt force injuries and suffocation. He had been dead for about two days.

At trial, defendant testified and recounted the abuse she suffered at the hands of the victim over the years. On the night of the offense, defendant had been crying, which awoke the victim. When he tried to sexually abuse her, she fought back. She grabbed a ballast and threw it at the victim, hitting him in the head. He threw it back at her. She threw the ballast and hit the victim many times. She thought she had killed him. She wrapped his head in a plastic bag because there was so much blood. When the blood seeped from the first bag, she wrapped his head and torso in another bag. Defendant admitted she threw away the ballast and the bloody sheets in a dumpster. She thought about leaving town and packed a bag. After the offense, defendant traveled to the airport in San Francisco, picked up her brother and his family, and drove them back to the Sacramento area. Defendant told no one the victim was dead.

2

In May and July of 2014, defendant told a defense therapist that the victim had physically, sexually, and emotionally abused her for years. The defense therapist testified at trial about domestic violence, intimate partner battering, and trauma.

There also was evidence the victim's wife and family from China were due to move to the area and defendant was not happy about the prospect.

### *Arguments and Recommendation for Probation, Low Term and High Term*

On April 10, 2015, prior to sentencing, defense counsel filed a statement in mitigation, seeking probation or the low term of three years. He claimed no planning was involved, defendant was not armed "with any conventional weapons," defendant committed the offense under great provocation, the offense was not sophisticated, the victim was not vulnerable, and defendant did not take advantage of a position of trust. Defense counsel acknowledged defendant inflicted physical harm. Defense counsel argued defendant was provoked by the victim's threat to rape her, she was a battered woman, she did not have a prior criminal record, her culpability was reduced due to domestic violence, she was willing to comply with probation, she was remorseful, she was not a danger, and she acknowledged wrongdoing, having turned herself in.

On April 24, 2015, the probation officer filed her report. She noted defendant was not eligible for probation unless the trial court found unusual circumstances, citing Penal Code section 1203, subdivision (e) (2) and (3). In recommending the upper term sentence of 11 years, the probation officer cited the great violence of the offense indicating defendant was a danger to society, as well as the manner in which the offense was carried out indicating planning.

At sentencing, defense counsel was "shocked" at the upper term recommendation by probation, arguing the probation officer had ignored mitigating factors outlined in his

3

statement in mitigation. Defense counsel sought no more than the low term of three years, conceding defendant's conduct was violent. Defense counsel disagreed with the probation officer's citation of planning as a factor in aggravation as well as defendant's dangerousness. He argued defendant was not a danger because the unique circumstances were not likely to reoccur.

Defendant sought leniency, stating she was "very regretful of what [she had] done" even though she was "literally forced to do so." Defendant apologized to the victim's family and stated nothing could "be repaired for [herself] as well as [her] family." She did not know the victim's family well and found it difficult to explain what had happened. She noted the problems her crime and in custody situation had caused her family. Defendant stated she was "willing to accept [the court's] fair judgment" and "whatever judgment you think is fair for me."

The prosecutor sought the upper term of 11 years as had been recommended by probation. The prosecutor claimed defendant had avoided a murder conviction with her belated claim of domestic violence. The prosecutor argued sophistication was shown when defendant disposed of the weapon and did not turn herself in until days later. He also argued defendant's offense was callous, noting defendant had suffocated the victim "assuring him of a slow death."

### Trial Court's Sentencing Ruling

The trial court stated it had considered all of the factors outlined by defense counsel in his statement in mitigation, the facts of the offense, and facts related to defendant. The court also noted it had heard the evidence adduced at trial. In denying probation, the court found there were no unusual circumstances rendering defendant eligible for probation. Even if eligible, the court stated it would not grant probation "given the nature and severity of the crime itself, which involved tremendous violence,

4

which is evidenced by the injuries that were documented by Dr. Fiore, the pathologist in this case." The court stated it was unclear whether the jury determined the offense was a crime of passion but there was a possibility provocation had already been considered. The court noted the jury had not accepted defendant's claim of perfect self-defense. The court found in aggravation: a weapon was used; the victim was vulnerable, noting that as a trained fighter, he must have been in a "vulnerable position, otherwise he could have warded off this attack;" defendant held a position of trust given their relationship; defendant inflicted physical injury; and defendant admitted having engaged in criminal conduct (cultivation of marijuana and theft of electricity) even though not convicted.

With respect to mitigating factors, the trial court noted, again, there was evidence of provocation. With respect to planning, the court found it was difficult to say because there were two versions based on one's view of the evidence. The court did not consider planning to be a factor either in aggravation or mitigation. The court considered defendant's claim of remorse to be for her family and the victim's family, noting defendant stated that "she was forced to do it and he started it." Although defendant testified she had "suffered prior abuse at the hands of the victim," there was no corroborating evidence. The court discounted the defense therapist's testimony because it was based on defendant's statements to her. But the court considered defendant's testimony as reflecting "some degree of domestic violence." The court found the aggravating factors outweighed those in mitigation and imposed the upper term sentence of 11 years.

## DISCUSSION

Defendant contends the matter must be remanded for resentencing because the trial court erroneously relied on six aggravating factors and erroneously discounted the

5

mitigating factor of domestic abuse. Contrary to defendant's contention, the trial court considered and weighed all the aggravating and mitigating factors and did not abuse its discretion in imposing the upper term of 11 years.

Pursuant to Penal Code section 1170, subdivision (b), "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." We review a trial court's selection of the lower, middle, or upper term for an abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "[A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid.*) The trial court may base its decision on any aggravating circumstance it deems significant and " 'reasonably related to the decision being made.' " (*Id.* at p. 848; see also Cal. Rules of Court, rule 4.408(a).) A single aggravating factor is sufficient to support an upper term sentence. (*People v. Steele* (2000) 83 Cal.App.4th 212, 226.)

Defendant argues the trial court's reliance on the following aggravating factors was misplaced: (1) use of a weapon; (2) vulnerability; (3) position of trust; (4) great violence; (5) arrest record; and (6) conduct after crime.

First, as to the use of a weapon, defendant admits the use of a weapon at the time of the crime can be used as an aggravating factor, but argues her use of a weapon did not make her offense of voluntary manslaughter "distinctively worse" than other manslaughters because a weapon is used in the overwhelming majority of homicides and defendant's use of the weapon was a "spur-of-the-moment" reaction to the victim's attempt to sexually assault her. We disagree. Here, defendant used a weapon (the ballast) to injure and render the victim unconscious and then used plastic bags and duct

6

tape to suffocate him. The trial court did not abuse its discretion in finding defendant used a weapon.

Second, as to whether the victim was particularly vulnerable, defendant argues the victim may have been surprised when defendant fought back to his attempted sexual assault but this did not make him particularly vulnerable. The trial court considered the testimony that the victim was a good fighter, taller, and bigger than defendant and found the fact the victim did not ward off the attack suggested he was in a vulnerable position. The evidence also showed he had defensive wounds on the back of his hand and wounds on the back of his head. The trial court did not abuse its discretion in finding the victim was vulnerable.

Third, defendant claims she did not exploit the intimate relationship she had with the victim to commit the offense so the aggravating factor of taking advantage of a position of trust did not apply. Defendant and the victim lived together and were in an intimate relationship. Defendant attacked the victim while he was in bed in the bedroom they shared. There was no abuse of discretion in finding defendant took advantage of a position of trust.

Fourth, although conceding most homicides involve "some form of violence," defendant argues her offense did not involve great violence because of the "context [of defendant]'s use of violence." The trial court heard the same evidence as the jury. The trial court is not required to agree with the jury's findings. "[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." (*United States v. Watts* (1997) 519 U.S. 148, 157 [136 L.Ed.2d 554, 565]; *In re Coley* (2012) 55 Cal.4th 524, 527.) Here, the victim suffered multiple injuries including non-fatal wounds. After he was rendered unconscious and no longer posed a threat to

defendant, defendant used plastic bags and duct tape to suffocate him. There was no abuse of discretion in finding defendant's offense involved great violence disclosing a high degree of viciousness or callousness.

Fifth, defendant claims her arrest for cultivation of marijuana that led to a house fire should not have been considered an aggravating factor because she had been a reluctant participant. Regardless of whether defendant was a willing or reluctant participant, she admitted she was arrested for marijuana cultivation and the cultivation led to a house fire. Based on defendant's history of cultivating marijuana for years, the trial court properly considered defendant's ongoing criminal conduct as a factor in aggravation.

Sixth, defendant claims the trial court erroneously relied upon her conduct of wrapping plastic bags over the victim's head after rendering him unconscious with the ballast because it was an element of the offense since doing so "caused his death." The trial court found defendant put the victim in a worse position by putting plastic bags over his head causing him to suffocate. The trial court also considered the fact defendant disposed of the weapon and bloody sheets, packed a bag to leave town, and waited days to turn herself in. There was no abuse of discretion in considering defendant's conduct following the crime as an aggravating factor.

With regard to mitigating factors, defendant claims the evidence of domestic violence should have been "considered as mitigation" since the jury's verdict may have been based on defendant's belief in the need to protect herself against the attempted sexual assault. Contrary to defendant's claim, the trial court did consider domestic violence as a factor in mitigation.

In sum, the trial court read and considered defendant's history, the arguments of counsel, and the probation report and statement in mitigation submitted at sentencing.

The court gave a lengthy ruling explaining its consideration of the aggravating and mitigating factors and found the aggravating factors outweighed the mitigating factors. Based on this record, we conclude there was no abuse of discretion.

DISPOSITION

The judgment is affirmed.

/s/
HOCH, J.

We concur:


/s/
BLEASE, Acting P. J.


/s/
NICHOLSON, J.