[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14591
Non-Argument Calendar
_____

D.C. Docket No. 3:18-cr-00150-BJD-JRK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DUANE ALLEN SIKES,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 20, 2020)

Before JORDAN, LAGOA and FAY, Circuit Judges.

PER CURIAM:

Duane Allen Sikes appeals his 120-month, above-guideline sentence for mail fraud, embezzlement of credit union funds, and subscribing to a false tax return. We affirm.

**I.**

Sikes was charged in a superseding indictment with the following offenses: ten counts of mail fraud, in violation of 18 U.S.C. §§ 2 and 1341; five counts of embezzlement of credit union funds, in violation of 18 U.S.C. §§ 2 and 657; and six counts of willfully making and subscribing, or causing to be made or subscribed, a fraudulent tax return, in violation of 26 U.S.C. § 7206(1). Sikes ultimately pled guilty to one count of mail fraud, one count of embezzlement of credit union funds, and one count of subscribing to a false tax return, pursuant to a written plea agreement with the government. The plea agreement provided that Sikes would forfeit any and all forfeitable assets, including his home.

According to the factual basis for the plea agreement, from at least 2007 to 2017, Sikes worked in the mail room at VyStar Credit Union. In this position, Sikes received weekly checks from VyStar, which were made out to "U.S. Postmaster." Sikes was responsible for using these checks to recharge VyStar's postage meter. Instead of recharging the postage meter, Sikes would use these checks to buy stamps at the post office, which he would then resell to Ben-Art Stamp Company. Sikes used the proceeds of these sales for his own benefit. From

2

2007 to 2017, Sikes misappropriated about $5,400,000 from VyStar and made approximately $3,663,200 in profits.  During this time period, Sikes also failed to report the profits from his stamp sales on his tax returns.  These false tax returns resulted in a total loss of $1,009,175 to the government.

After Sikes pled guilty, the government moved to modify the conditions of his release, arguing that it had obtained information suggesting that he should (1) be placed on home confinement with GPS monitoring, (2) undergo individualized counseling sessions, (3) not have any contact with any minors, (4) not have any contact with any victims or witnesses in the case, except through counsel, and (5) be subject to unannounced searches at his residence.

At the hearing on the motion, Sikes opposed the motion and denied the allegations against him; however, he stated that he had no objection to the government's request that he refrain from contacting any minors or any victims or witnesses in the case, except through counsel.  Sikes argued that the government had been aware of the allegations against him for several months but did not act on them at that time.  Sikes further contended that, if the government sought to present the allegations to the court, he should be permitted to know who the witnesses were and cross-examine them.  The magistrate judge denied this request. The magistrate judge then explained that he would either order that Sikes be detained or decline to modify the conditions of his release, depending on whether

3

there was clear and convincing evidence that he was not a danger to the community.

The government then explained that, through bank records, it had identified four individuals who were willing to testify regarding alleged inappropriate sexual misconduct with boys between the ages of 13 and 17.  The government stated that Sikes had performed sex acts on the boys and paid them both in cash and expensive gifts, such as cars and meals.  The government summarized the proposed testimony from the alleged victims.  Sikes noted that the government had become aware of the allegations against him during the plea negotiations and questioned why the government had not obtained a warrant to search his home or raised the allegations earlier.  The magistrate judge permitted Sikes to cross-examine the case agent who investigated the alleged misconduct.

The government contended that the alleged victims' testimony raised a sufficient possibility of ongoing misconduct because it highlighted an extensive scheme on Sikes's part.  The magistrate judge declined to subject Sikes to unannounced searches, home confinement, or GPS monitoring; however, he modified the terms of Sikes's release such that he was precluded from making any contact with any minor or the alleged victims, except through counsel.

The presentence investigation report ("PSI") recited similar facts to those stated in the factual proffer for the plea agreement.  Based on a total offense level

of 24 and a criminal history category of I, the probation officer calculated Sikes's

guideline imprisonment range as 51 to 63 months.  The probation officer did not

highlight any factors warranting a departure from the applicable guideline range.

Neither Sikes nor the government submitted written objections to the PSI.

In its sentencing memorandum, the government contended that Sikes's

inappropriate arrangement with the underage boys was his motivation for his

underlying financial crimes.  The government argued that the district court was

permitted to consider Sikes's sexual misconduct in determining his sentence

because it was authorized to consider any information relating to his background

and character, including uncharged conduct.

In his sentencing memorandum, Sikes asked the district court to consider his

acceptance of responsibility, noting that he offered to cooperate early on.  Sikes

also contended, in part, that he had strong community support and did not use the

proceeds from his crimes for greedy or selfish ends, choosing instead to give some

of the money to others in the community.  He also encouraged the district court to

consider his various health problems.  Sikes asked the district court to consider a

downward variance and submitted an affidavit regarding his assistance to VyStar, a

short autobiography, documents summarizing his health issues, and 25 letters of

support from community members describing him as generous and of good

character.

At the sentencing hearing, the district court noted at the outset that it had considered Sikes's and the government's sentencing memoranda, as well as the PSI.  Neither Sikes nor the government raised any objections to the PSI.  The district court adopted the guideline calculations from the PSI.

After hearing testimony from Sikes's character witnesses and the government's witnesses, the district court stated, "[b]oth the length and the amount of the loss suffered by the victim in this case make it among the most egregious frauds and thefts in the Court's experience."  The court further stated, however, that this was not the troubling aspect of the case.  The court stated, "[t]he troubling aspect of the case is the history and characteristics of Mr. Sikes that have come to light in the context of the sentencing hearing regarding the theft."  The court explained that the allegations of sexual misconduct were "unrelated, at least theoretically," to the offenses of conviction and had not been the subject of discovery but noted that Sikes had the opportunity to test the allegations in court. The court acknowledged that the sexual-misconduct allegations were uncharged but noted that the Sentencing Guidelines authorized it to consider any information about Sikes's characteristics that was proven by a preponderance of the evidence.

The district found that the government had met that burden of proof, noting that it believed Sikes's accusers and explaining that the accusers had legitimate reasons for previously declining to come forward.  The court further noted that

6

Sikes's sexual misconduct was not wholly unrelated to his financial crimes because he used the proceeds of his embezzlement to sustain his pattern of sexual activity with young boys. The court noted that there were countless examples of Sikes doing good with the fruits of his financial crimes but explained that there also was ample evidence that he used those proceeds to sustain his pattern of sexual misconduct. The court stated that it was shocked and offended by the scope, length, and extent of Sikes's financial and sexual schemes.

The district court explained that it was obliged to fashion a sentence that would protect the community and deter future criminal conduct; it would fashion a sentence that would promote respect for the law, provide just punishment, and account for the different types of sentences available.

The district court sentenced Sikes to 120 months of imprisonment, explaining that it had considered the parties' memoranda, the pretrial status reports, the admitted evidence, the PSI, Sikes's allocution, and the parties' arguments. The court explained that the sentence consisted of concurrent terms of 120 months of imprisonment as to the mail fraud and embezzlement charges, as well as a concurrent sentence of 36 months of imprisonment as to the false-tax-return charge. The court also imposed five years of supervised release as to the mail fraud and embezzlement charges, as well as a concurrent one-year term as to the tax charge. The court ordered Sikes to pay $5,284,800 in restitution to CUMIS

7

Insurance Society, VyStar's insurer, and $150,000 to VyStar. The court waived the imposition of any fine based on Sikes's financial status and ordered the forfeiture of both of Sikes's parcels of real property. The court explained that it had considered the Sentencing Guidelines and the 18 U.S.C. § 3553(a) factors and found that its sentence was sufficient but not greater than necessary to comply with the statutory purposes of sentencing. The court then ordered Sikes to pay $1,009,175 in restitution to the IRS.

Sikes objected to his sentence, arguing that it was unreasonable for the reasons highlighted in his sentencing memorandum. Sikes also objected that his sentence was unreasonable because the district court's consideration of uncharged conduct that was established only by a preponderance of the evidence violated his constitutional rights. The district court noted these objections for the record and overruled them.

Sikes raises three issues on appeal. First, he argues that the district court violated the Fifth and Sixth Amendments by imposing an above-guideline sentence based on uncharged allegations that he engaged in sexual misconduct with minors. Second, Sikes asserts that his sentence is procedurally unreasonable because the district court did not properly consider the 18 U.S.C. § 3553(a) factors and failed to adequately explain its upward variance from the guideline range. Third, Sikes contends that his sentence is substantively unreasonable because the district court

failed to sufficiently consider the guideline range, focused single-mindedly on his uncharged conduct, and did not provide an adequate explanation for rejecting his mitigation arguments.

## II.

### A.

We review questions of constitutional law *de novo*. *United States v. Whatley*, 719 F.3d 1206, 1213 (11th Cir. 2013). However, we review sentencing challenges raised for the first time on appeal for plain error. *United States v. Henderson*, 409 F.3d 1293, 1307 (11th Cir. 2005). To prevail under this standard of review, a defendant must establish a plain error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904-05 (2018).

To preserve an issue for appeal, a party "must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought." *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (quoting *United States v. Dennis*, 786 F.2d 1029, 1042 (11th Cir. 1986)). An objection must be stated in clear and simple language such that the trial court may not misunderstand it. *Id.*

At sentencing, a district court is generally permitted to rely on any information concerning a defendant's background, character, and conduct.

18 U.S.C. § 3661.  In addition, the Sentencing Guidelines provide that a district court "may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law," in determining whether to impose a sentence within the guideline range or whether a departure is warranted.  U.S.S.G. § 1B1.4.

The Supreme Court explained in *United States v. Watts*, 519 U.S. 148, 117 S. Ct. 633 (1997), that a sentencing court may rely on uncharged and acquitted conduct that has been proven by a preponderance of the evidence, noting that the consideration of such conduct is consistent with the Double Jeopardy and Due Process Clauses.  *See id.* at 151-57, 117 S. Ct. at 635-38.  Subsequently, in *United States v. Belfast*, 611 F.3d 783 (11th Cir. 2010), we held that there was no constitutional violation where the district court sentenced the defendant based on uncharged conduct because the defendant's ultimate sentence was below the applicable statutory maximum sentence.  *Id.* at 800-01, 827-28.

We are bound by a prior panel opinion until the opinion's holding is overruled or undermined to the point of abrogation by the Supreme Court or this Court sitting en banc.  *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019).  There is no exception to this rule for a perceived defect in the prior panel's analysis.  *United States v. Fritts*, 841 F.3d 937, 942 (11th Cir. 2016).  In addition,

10

we are bound by Supreme Court precedent. *See United States v. Thomas*, 818 F.3d 1230, 1243 (11th Cir. 2016).

Here, the district court did not err, plainly or otherwise, in considering Sikes's uncharged conduct. The Supreme Court has held that a sentencing court can consider uncharged conduct that has been established by a preponderance of the evidence; furthermore, we have held that a sentencing court does not violate the Constitution when it considers uncharged conduct, so long as the defendant's ultimate sentence does not exceed the applicable statutory maximum. *See Watts*, 519 U.S. at 151-57, 117 S. Ct. at 635-38; *Belfast*, 611 F.3d at 800-01, 827-28. We are bound by this precedent. *See Gillis*, 938 F.3d at 1198; *Thomas*, 818 F.3d at 1243.

Sikes does not contend that his sentence exceeds the applicable statutory maximum or that his sexual misconduct was not established by a preponderance of the evidence. Instead, he contends that Supreme Court Justices and other judges and commentators have asserted that the Fifth and Sixth Amendments preclude district courts from considering uncharged conduct at sentencing. Nevertheless, even if these jurists and scholars are correct and *Watts* and *Belfast* were wrongly decided, we would not be permitted to overlook them because they have not been overruled or otherwise abrogated. *See Gillis*, 938 F.3d 1181, 1198; *Fritts*, 841 F.3d at 942; *Thomas*, 818 F.3d at 1243. Accordingly, the district court did not

11

violate the Fifth and Sixth Amendments when it imposed an above-guideline sentence based on Sikes's uncharged sexual misconduct.

**B.**

The first step in reviewing the reasonableness of a sentence is determining whether the sentence is procedurally reasonable. *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016). The reasonableness of a sentence is generally reviewed under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). However, if a party does not raise a procedural sentencing argument before the district court, we will review that argument only for plain error. *United States v. McNair*, 605 F.3d 1152, 1222 (11th Cir. 2010). In addition, the amount of deference involved in an abuse-of-discretion review of a sentence can vary depending on the type of error alleged. *United States v. Barrington*, 648 F.3d 1178, 1194 (11th Cir. 2011). Furthermore, we always review *de novo* the issue of whether the district court failed to explain the reasons for its sentence imposed outside of the guideline range, even if the defendant failed to properly object on those grounds. *United States v. Parks*, 823 F.3d 990, 996-97 (11th Cir. 2016).

Errors that cause a sentence to be procedurally unreasonable include miscalculating the guideline range, treating the Sentencing Guidelines as mandatory, failing to consider the § 3553(a) factors, imposing a sentence based on

12

clearly erroneous facts, and failing to explain the sentence adequately. *Trailer*, 827 F.3d at 936.

A district court's sentence must be sufficient, but not greater than necessary, to achieve the goals of sentencing, which are: reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, deterring future criminal conduct, protecting the public, and providing the defendant with any needed training or treatment. 18 U.S.C. § 3553(a). A district court must also consider the nature and circumstances of the offense, the defendant's history and characteristics, the kinds of sentences available, the Sentencing Guidelines, any pertinent policy statement, the need to avoid disparate sentences for defendants with similar records, and the need to provide restitution to any victims. *Id.*

In explaining its chosen sentence, a district court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007). It is not necessary, however, for the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors. *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013). Nevertheless, the required extent of a district court's explanation may change depending on the type of sentence at issue. *Rita*, 551 U.S. at 356-59, 127 S. Ct. at 2468-69. For example,

13

if a district court imposes a sentence outside the guideline range, it should "ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50, 128 S. Ct. at 597. In addition, "a major departure" from the guideline range demands more explanation than a minor one. *Id.*, 128 S. Ct. at 597. Even so, an "extraordinary justification" is not required for a sentence outside the guideline range. *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009).

Sikes's procedural challenges fail because the district court imposed a procedurally reasonable sentence, as it considered the § 3553(a) factors and explained its reasoning for the sentence sufficiently.[1] The record reflects that the district court considered the § 3553(a) factors, as it highlighted the circumstances of Sikes's offenses and noted its responsibility to fashion a sentence that protected the community, deterred future criminal activity, promoted respect for the law, provided just punishment, and accounted for the different types of sentences available. In addition, although Sikes contends that the district court focused single-mindedly on his sexual misconduct, the record shows that it considered other factors, such as the high amount of loss involved in his financial crimes.

---

[1] We note that Sikes's argument that the district court failed to properly consider the § 3553(a) factors is subject to review for plain error because he did not raise such an argument in the district court. *See McNair*, 605 F.3d at 1222. However, Sikes's argument that the district court failed to sufficiently explain its sentence outside the guideline range is subject to *de novo* review, even though he did not object on these grounds in the district court. *See Parks*, 823 F.3d at 996-97.

Furthermore, the district court provided a sufficient explanation for its sentence.  The district court imposed an above-guideline sentence and was, therefore, required to provide a justification that was sufficiently compelling to support the degree of variance.  *See Gall*, 552 U.S. at 50, 128 S. Ct. at 597.  Nevertheless, it was not required to provide an extraordinary justification for its above-guideline sentence.  *See Shaw*, 560 F.3d at 1238.  Here, the district court's explanation was sufficient because it acknowledged that it considered the parties' submissions and evidence, found that Sikes's sexual misconduct had been established by a preponderance of the evidence, noted that his sexual misconduct was related to his financial crimes, and stated that it was shocked by the extent of his sexual and financial wrongdoing.  Thus, the district court's explanation was enough to satisfy us that it considered the parties' arguments and had a reasoned basis for exercising its decisionmaking authority.  *See Rita*, 551 U.S. at 356, 127 S. Ct. at 2468.  Accordingly, the district court imposed a procedurally reasonable sentence.

## C.

We apply an abuse-of-discretion standard and analyze the totality of the circumstances when assessing the substantive reasonableness of a sentence.  *Gall*, 552 U.S. at 51, 128 S. Ct. at 597.  This standard applies regardless of whether the sentence in a given case is outside the guideline range.  *Id.*, 128 S. Ct. at 597.

15

Overall, we will only vacate a sentence if we are left with a definite and firm conviction that the district court clearly erred in its consideration of the § 3553(a) factors. *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016).

The weight given to any of the § 3553(a) factors is committed to the sound discretion of the district court. *Id.* A district court is not required to explicitly discuss each of the factors, and a sentence may be affirmed so long as the record indicates that the sentencing court considered a number of the factors. *See United States v. Dorman*, 488 F.3d 936, 944 (11th Cir. 2007). Even so, a district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). Furthermore, a district court's unjustified reliance on any one § 3553(a) factor to the detriment of all the others may be a symptom of an unreasonable sentence. *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008).

When a district court imposes an above-guideline sentence, there is no presumption that the sentence is unreasonable. *United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010). When we review an above-guideline sentence, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 574 (quoting *Gall*, 552 U.S.

16

at 51, 128 S. Ct. at 597).  In addition, a sentence that is well below the statutory

maximum "points strongly to reasonableness."  *United States v. Nagel*, 835 F.3d

1371, 1377 (11th Cir. 2016).

Here, the district court imposed a substantively reasonable sentence because

it did not unreasonably focus on Sikes's sexual misconduct and sufficiently

considered the guideline range and Sikes's arguments in mitigation.  Although

Sikes argues that the district court focused single-mindedly on his sexual

misconduct, the record shows that the district court also considered other factors,

such as the high amount of loss involved in and the duration of his financial

crimes.  The record indicates that the court gave significant weight to Sikes's

sexual misconduct, but it had the discretion to determine how this factor, which

pertained to the nature and circumstances of the offense and Sikes's history and

characteristics, should be weighted.  *See* 18 U.S.C. § 3553(a); *Croteau*, 819 F.3d at

1309.  In addition, the record shows that the court sufficiently considered the

guideline range because an extraordinary justification is not required for an above-

guideline sentence, and the court noted that it was required to fashion a sentence

that accounted for the different types of available sentences.  *See Shaw*, 560 F.3d at

1238.

Sikes also contends that his sentence is substantively unreasonable because

the district court did not explain why it rejected his mitigation arguments.  A

17

sentence may be substantively unreasonable when the district court fails to consider relevant factors that were due significant weight, *see Irey*, 612 F.3d at 1189, but the record shows that the district court considered Sikes's mitigation arguments and addressed one of them specifically. The court specifically addressed Sikes's argument that he used the proceeds of his financial crimes for unselfish ends, noting that, although he may have used some of the proceeds to help others, he also used the proceeds to support his pattern of sexual misconduct. In addition, although the court did not specifically address Sikes's other mitigation arguments, it stated that it considered them and cited the extent of Sikes's inappropriate conduct in imposing an above-guideline sentence. Thus, the district court sufficiently considered and addressed Sikes's mitigation arguments. *See id.*

   **AFFIRMED.**